RYAN v. NEWARK SPRING MATTRESS CO.

(Circuit Court, D. New Jersey. July 20, 1899.)

**1. PATENTS—VALIDITY—PRIOR PATENT TO SAME INVENTOR.**
A patent is not rendered invalid by the fact that all the elements of the claim are contained in the claim of a prior patent to the same inventor, when such prior patent also has in combination additional mechanism necessary to enable the device to accomplish the purpose for which it was designed, and when the subsequent patent discloses a new use for one of the elements, entirely separate and distinct from that specified or claimed in the prior patent, and one which it required inventive skill to discern.

**2. SAME—ANTICIPATION.**
It is not sufficient to constitute anticipation that the device relied on might, by modification, be made to accomplish the function performed by that of the invention, if it were not designed by its maker, nor adapted, nor actually used for the performance of such function.

**3. SAME—INFRINGEMENT BY CORPORATION—NOTICE—LACHES.**
Where one of the two officers who organized the defendant company was, at the time of such organization, a licensee under plaintiff's patent, and the other had recently made a compromise for past infringements, *held*, that their knowledge was the knowledge of the company, so as to preclude it from claiming that its infringement was entered upon in the belief that plaintiff's rights were worthless and abandoned.

**4. SAME—BED OR MATTRESS SUPPORTING FRAMES.**
The Palmer patent, No. 251,630, for a bed or mattress supporting frame, construed, and *held* not anticipated, valid, and infringed.

This was a suit in equity by James B. Ryan against the Newark Spring Mattress Company for alleged infringement of a patent.

Stephen J. Cox, for complainant.

Milton E. Robinson and Mark W. Potter, for defendant.

KIRKPATRICK, District Judge. The complainant in this cause is the holder by assignment of certain letters patent, No. 251,630, issued to Frederick A. Palmer, December 27, 1881, for a bed or mat-

tress supporting frame. The object of the bill is to restrain the defendant from the use of the patented device as set out in the first claim of the said patent, which is as follows:

(1) "A bed bottom or supporting frame for beds and mattresses, which comprises in its construction end rails, A, A', which project beyond its side rails, B, B', and a woven wire or other suitable fabric, C, which extends laterally outward beyond and above the side rails, B, B', substantially as and for the purpose described."

The sole question to be determined by the court is the validity of the patent, because it is admitted by the defendant that, "if the patent is valid, the defendant's construction comes within the terms of the first claim."

Fig1.

Fig2.

Fig3.

Prior to the granting of the patent in suit, wire mattresses had been supported on slats, but this means was objectionable on account of the height to which the bed was raised by the placing upon the wire mattress of the superincumbent hair or other mattress which it was necessary to use in connection therewith. To obviate this difficulty, "Z" irons were used in the corners of the bedsteads, whereby the wire mattress was lowered. The "Z" irons were shaped with two right angles, the long side extending up to the top edge of the side rail, and then a flange thrown out, and hooked on the angle iron of the bedstead, to form a support. The other, or lower, end of the "Z" iron was fastened to the underside of the mattress frame. In order that the wire mattress could be so supported by the "Z" irons, it was necessary that it should be from 5 to 6 inches narrower than the bedstead, whereby a space of $2\frac{1}{2}$ to 3 inches on each side was not covered by the bedding. The objects sought to be secured by the complainant's patent were to obviate these objections, to dispense with the use of "Z" irons, thereby saving cost, and at the same time keep down the height of the bed, and carry the sides of the fabric of the wire mattress over the side rails of the bed, so that persons might sit upon a substantial support, instead of in a hole or depression in the surface. That the complainant's device accomplished these results is not denied. Its utility and desirability is shown by its general adoption by the trade, and its novelty and patentability acquiesced in by many large manufacturers of woven wire mattresses, who accepted licenses to use the same. The patent in suit was granted by the patent office without interference or reference to any prior patents, as appears from the file wrapper. The defendant, in its answer, charges that this was the result of fraud, but no evidence has been adduced in its support. The defendant insists that the patent in suit is void, because the subject-matter of claim 1 therein was described in a prior patent granted to Frederick A. Palmer, February 8, 1881 (No. 237,-586). The claim of this last-named patent to which it refers is in these words:

"A mattress frame or bed bottom which comprises in its construction—First, side rails, with both ends sloping outwardly as shown; second, end bars applied upon the sloping portions of the side rails, and extending beyond the side rails; third, a woven wire or other fabric, W, applied upon the end bars, and extending beyond or overhanging the side rails of the frame; and, fourth, mechanism for holding the end bars in position upon the side rails, and for adjusting the woven wire or other fabric, substantially as described."

The object of this patent is declared in the specification to be "to provide an improved movable frame or mattress to be used in bedsteads, * * * and in place of slats, springs, or other appliances for the support of the bedding." It will be noticed that, while all the elements of claim 1 of the patent in suit are contained in the claim of patent No. 237,586, the latter patent has in combination an additional mechanism for holding the end bars in position upon the side rails, and for adjusting one of the end bars in order to stretch the woven wire or other fabric. This mechanism in patent No. 237,586 is necessary to enable the device to accomplish

the purpose for which it was designed, viz. to secure a tip-back end bar, the obtaining of a curved end, and a means for adjusting the tension of the fabric; but none of these devices affect the operation of the overhanging end bar when used in connection therewith, nor does the overhanging end bar affect the operation of the said devices. There is no co-operation or co-ordination between them. There is nothing found either in the claim or specification of patent No. 237,586 which suggests any function for the overhanging end bar, and it was not until it was specified in patent No. 251,630 that it became apparent as a means of affording a support for the wire mattress. The claims of the patents are not co-extensive, and the inventor was entitled to a separate patent for each. Vulcanite Pav. Co. v. American Artificial Stone Pavement Co., 36 Fed. 378. "Claims are not co-extensive where one specifies all the features of any or all the parts of its subject while one omits one of those subjects." Thomson-Houston Electric Co. v. Elmira & Horseheads Ry. Co., 69 Fed. 257. I have no doubt that the patent in suit discloses a new use for the projecting end bars, which is entirely separate and distinct from that specified or claimed in the prior patent, and one which it required inventive skill to discern. Under these circumstances it should not be denied the merit of patentability. Manufacturing Co. v. Cary, 147 U. S. 623–637, 13 Sup. Ct. 472; Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11–18, 12 Sup. Ct. 601. The question whether the claim of the patent in suit was a separate and distinct invention from that embraced in patent No. 237,586 is presented to the court here with no further or other evidence than that which was before the patent office. It will be presumed that the patent office acted understandingly, and the court will not disturb their finding.

It is also contended on the part of the defendant that the device of the complainant's patent lacks novelty; that the invention is fully anticipated by the patent to Tracy (No. 202,302, dated April 9, 1878), by the Boda patent (No. 170,333, dated November 23, 1875), Richardson patent (No. 126,743, dated May 14, 1872), Young patent (No. 170,040, dated November 16, 1875), and by the Kelso bed (defendant's Exhibit No. 10). If these several patents, with their specifications, be examined, it will be seen that none of them describe, claim, or mention a single element of the invention of complainant's patent, and that none of them are designed to furnish a woven-wire mattress which could be supported by its projecting end rails resting upon the side rails of the bedstead. Projecting end rails may be shown in the drawings accompanying the patent applications, but they are not so full or complete as to describe the invention of complainant's patent, or enable one skilled in the art to attain the same result. So, too, in the Kelso bed (defendant's Exhibit No. 10), it is constructed with end bars extending beyond the side rails, but, if all that is claimed for them be true, it cannot be construed as showing anticipation, because the extended end bars were not adapted to perform the functions of those of the patent in suit. "It is not sufficient," said the court in Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, "to constitute anticipation, that the device relied on

might, by modification; be made to accomplish the functions performed" by that invention, "if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions." Following this guide, the circuit court for the Western district of Pennsylvania held that "a mere accidental use of the features of an invention, without recognition of its benefits, does not anticipate a patent." Burner Co. v. Diamond, 72 Fed. 182.

The defendant also charges the complainant and those through whom he claims with laches. Roberts, the president of the Hartford Woven-Wire Mattress Company, is the only witness produced to substantiate the charge. He says that he, on behalf of his company, early in the life of the patent denied its validity, and that no suit was ever brought against them. He declines to say upon cross-examination whether the company has paid or is paying royalty for the use of the patented device. The defendant corporation was incorporated in the latter part of October, 1897. On November 1, 1897, the bill of complaint in this cause was filed. At the time of its incorporation, P. B. Rooney, the president of the company, was a licensee under complainant's patent, and Wilfred A. Manchee, the treasurer of the company, had recently made a compromise with the complainant for past infringements. Together Rooney and Manchee owned 99 out of 100 shares of the capital stock of defendant company. Whether the corporation was a mere cover for the improper acts of Rooney and Manchee, and therefore estopped by their acts from denying the validity of complainant's patent, it is not necessary to decide. It is certain that their knowledge was the knowledge of the company, and it cannot, therefore, be said that the infringement was entered upon under the belief that the complainant's alleged rights were worthless, or abandoned. Galliher v. Cadwell, 145 U. S. 372, 12 Sup. Ct. 873. Decree should be for complainant.