COLUMBIA WIRE CO. v. KOKOMO STEEL & WIRE CO.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1905.)

No. 1,077.

1. PATENTS—INFRINGEMENT—IMPROVEMENT PATENT.

The patentee of an invention which, although for an improvement only, is of undoubted utility and constitutes a marked advance in the art, is entitled to protection, not only against colorable changes, but also to the benefit of the doctrine of equivalents commensurate with the invention disclosed.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 379.]

2. SAME—CHANGE IN FORM OR ARRANGEMENT OF PARTS.

A patentee is entitled to protection against evasions of the wording of a claim in form or nonessential details, where the substance of the invention, which is unmistakably disclosed in the claims and specification, has been appropriated.

[Ed. Note.—For cases in point see vol. 38, Cent. Dig. Patents, § 370.]

3. SAME—INTERCHANGEABILITY OF PARTS.

Interchangeability of parts in two machines is not a conclusive test of infringement, where in the alleged infringing machine the parts have merely been rearranged by transferring their different functions, while the principle of operation remains the same, and the recombination as a whole is the equivalent of that of the patent.

4. SAME—PROTECTION AGAINST IMPROVER.

The exclusive privilege of a patentee is to be protected to the full extent of his invention and grant, equally against an improver and the general public.

5. SAME—WIRE-BARBING MACHINE.

The Bates patent, No. 365,723, for a wire-barbing machine, in which three butterfly wheels are used in combination in delivering the wire from the barbing mechanism to the twisting and spooling mechanism, discloses patentable invention; also *held* infringed by the machine of the Fredrich patent, No. 711,303.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant, Columbia Wire Company, is the owner of letters patent No. 365,723, issued June 28, 1887, to A. J. Bates, and this appeal is from a decree dismissing its bill for infringement thereof for want of equity. The patent specifies, as the subject-matter of the invention, "improvements in wire-barbing machines," and the mechanism is a combination and arrangement of old means in the art for making barbed wire, "in which short pointed barbs are cut from a wire, then coiled around one or both of the strand wires, and the strand wires firmly twisted together and reeled upon a spool." In its general structure, objects, and operation, the mechanism is not novel, and the only elements of novelty claimed or involved in the suit are the combination of three so-called butterfly-wheels applied to the feeding means in the manner and for the objects described in the patent, so that elaborate specifications therein of the various means employed in the machine as a whole are not essential for an understanding of the issues. While the butterfly-wheel appears in the prior art, no three-wheeled combination is disclosed prior to this patent. These wheels are arranged between the coiling and the twisting-and-spooling means, and accomplish a great improvement in the speed and accuracy of the production. The following drawing, exhibited at the hearing, clearly indicates the structure of this three-wheel combination:

The structure and operation of these wheels respectively are thus well described in the appellant's brief:

"The top wheel, the wheel, C⁵, of the patent, is an oscillating wheel, mounted on a swinging arm, C², which is oscillated back and forth by a crank-roller, C. Each forward swing of this wheel draws a certain length of wire forward, and at each back swing the wire thus drawn forward is taken up by the wheels below and by the twister. The part of the strand wire back of the butterfly-wheel therefore moves intermittently, with periods of rest at which the barbs are cut and coiled on the strands, while the part of the strands in advance of this wheel is taken up continuously by the spooler and twister and travels without stop. The middle wheel, C⁶, of the patent has stationary bear-

ings, and the bottom wheel, E, of the patent is mounted on a yielding arm, E¹, backed by a spring, V¹, so that it will yield towards and from the twister as the tension of the barbed wire increases or diminishes. The wire passes around these wheels in a zigzag manner and from the lower wheel it passes to the twister. Each forward swing of the top butterfly-wheel draws a certain length of wire forward through the barb-coiling mechanism. In so doing it coacts in an important way with the middle wheel, for as the strand wires pass forwardly around the top wheel and then rearwardly around the middle wheel, the top wheel acts upon a bight or doubled portion of the wire, and will draw forward an amount of wire twice as long as the distance of its own oscillation. The rotating butterfly-wheel below is at the same time also drawing the wire forward at an equal rate, so that at each forward oscillation of the top butterfly-wheel four times the distance of its travel in length of wire is drawn through the machine. The patent specification emphasizes this as important and says: 'During each half rotation of the machine, while the barbs are being placed on the strand wires, it is supplied with wire by the slack wire given out by the return vibration of wheel, C⁵; and when wheel, C⁵, is vibrated reversely to take up the wire, wheel, C⁶, is fed by drawing the wire around wheel, C⁵, at the same time said wheel, C⁵, is taking up, and thus during the time wheel, C⁵, is taking up wire, wheel, C⁶, has drawn one-half the required feed around wheel, C⁵, and as the wire is passing to and about wheel, C⁵, and back toward the machine to wheel, C⁶, by means of such passage of the wire, the wire taken up by wheel, C⁵, is equal to twice the distance of the vibration of said wheel, and thus said wheel, C⁵, is vibrated but one-fourth the distance that the barbs are placed apart, and consequently has a very easy and uniform movement.'

"The importance of the 'easy and uniform movement,' which the specification mentions, is that, notwithstanding the high speed of the machine and the great frequency of oscillation of the top butterfly-wheel, the extent of its oscillation, being reduced to one-fourth of the length of the wire drawn out thereby, is so short that it produces very little jar and friction, and the machine can therefore be used without rapid and destructive wear. The top butterfly-wheel vibrates 600 times per minute. If the middle wheel were dispensed with, the top wheel would no longer operate upon a bight of the strand wire. The distance of its oscillation would have to be doubled in order to draw out the same length of wire. It would have to travel twice as far in the same length of time. This would double the jarring of the parts; and as the item of wear and tear is of the greatest consequence, the saving which is effected by the simple expedient of reducing the travel of the top wheel by using the middle butterfly-wheel is an important element. It enables the machine to be driven at a very high speed without increasing the wear of the working parts. The bottom butterfly-wheel is of like importance. It is mounted on a yielding arm, E¹, and the barbed wire passes from it directly to the twister. Therefore every change in the tension of the wire will be indicated by the position of the arm, E¹. The operator's eye will detect at once a forward motion of the arm which indicates too great tension on the wire, or a relaxing of the arm which indicates too little tension, and in response to the indication thus afforded he can immediately adjust the friction brake and maintain the tension uniform. The machine can therefore be driven at the highest rate of speed of which it is capable without impairing the control exercised by the operator. All he has to do is to glance occasionally at the position of the yielding arm which operates as visibly and as certainly during rapid running as when the machine is running slowly. The specification says on this point: 'The yielding end of arm, E¹, which supports the butterfly-wheel, E, serves as an indicator for the operator of the machine to indicate to him about what tension is on the barbed wire as it passes to the spooling mechanism. When spring, V¹, on rod, V, of said arm is closely compressed, it indicates that the tension is too great, and the operator then turns back the hand-wheel, b, to loosen the spooler-brake, and when said tension is loosely expanded it indicates that the tension is not sufficient, and the operator then tightens the brake of the spooling mechanism, and thus is enabled to maintain a uniform tension.' "

The patent contains thirteen claims, but claims 5, 7, 9, and 13 are relied upon for the alleged infringement, namely:

"(5) In a wire-barbing machine, and in combination with the barbing mechanism, the vibrating butterfly-wheel, C⁵, yielding butterfly-wheel, E, and stationary driven butterfly-wheel, C⁶, and mechanism, substantially as described, for operating said parts, as and for the purpose set forth."

"(7) In the wire-barbing machine described, and in combination with the positively-driven wheel, C⁶, and a driven spooler, the yielding wheel, E, arranged between said wheel, C⁶, and spooler, substantially as and for the purpose set forth."

"(9) In the wire-barbing machine described, the combination of the oscillating butterfly-wheel, C⁵, driven butterfly-wheel, C⁶, and yieldingly-supported butterfly-wheel, E, constructed and arranged to operate in the manner substantially as and for the purpose specified."

"(13) In a wire-barbing machine wherein the strand-wires, being barbed, are intermittingly drawn through the barbing mechanism of the machine, the combination of a butterfly vibrating wheel arranged to move toward and from and support the barbed wire moving from the barbing mechanism, a continuously-driven butterfly-wheel arranged to take and support the barbed wire from said vibrating wheel, and an idler butterfly-wheel arranged to take and support the barbed wire paid out by said driven butterfly-wheel and guide it to the spooling mechanism, whereby the barbed wire is intermittingly drawn through the barbing mechanism by the joint action of the movement of said vibrating butterfly-wheel from the barbing mechanism, and the said driven butterfly-wheel drawing the wire from and over said vibrating wheel, and whereby the barbed wire is continuously paid out to the spooling mechanism by means of the continuous movement of said driven wheel, being supplied with slack wire from said vibrating wheel during the time said vibrating wheel is moving toward the barbing mechanism, substantially as and for the purpose specified."

The defenses set up were (1) want of invention, (2) noninfringement, and (3) justification under letters patent No. 711,303, issued to J. E. Fredrich, October 14, 1902; and the decree of the Circuit Court rests on the view that the appellee's machine (made in conformity with the Fredrich patent) does not infringe the three-wheel combination of the Bates patent. The structure of this machine, in so far as concerns the charge of infringement, appears in an exhibit drawing, as follows:

Other facts which are deemed material are mentioned in the opinion.

For opinion below, see 139 Fed. 578.

John R. Bennett and T. W. Bakewell, for appellant.
Thomas A. Banning and C. C. Shirley, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge, after stating the facts, delivered the opinion of the court.

The evidence is convincing, as well as undisputed, that the three-wheel combination of the Bates patent achieved success and popularity in the production of barbed wire, with great improvement in the speed and accuracy of the operation, and thus made desirable advance in the barb-wiring art. In reference to the contention that the patent is invalid for want of invention—that it involved "nothing more than mechanical skill" to so improve the two-wheeled combination disclosed in an earlier patent, No. 270,646, issued to Edenborn & Griesche in 1883—it is sufficient to remark that the assumed prototype for the use of two butterfly-wheels was a failure, and Bates was the pioneer in his conception of a three-wheel combination, which solved the problem where other inventors had failed in the quest. Exact measurement of the faculty thus brought to the solution is needless in the face of this undeniable achievement. The combination so devised is both new and useful in the sense and within the objects of the patent law, and its patentable novelty is substantially conceded by a leading expert, testifying on behalf of the appellee. That it was patentable subject-matter is undoubted.

In the subsequent device of Fredrich, under which the appellee's machine is made, three butterfly-wheels are used in a combination, with all the general characteristics and advantages of the Bates three-wheel combination, and differing only in certain details and transpositions, upon which escape from infringement is sought. The facts are neither complicated, nor disputed in any feature deemed material, and solution of the issue of infringement rests on the scope of the invention and claims in suit. The machines are alike in adopting the barbing devices and the twisting and spooling mechanism of the prior art. Both adopt the butterfly-wheel combination for delivering the barbed wire from one to the other of the mechanisms. The combination thus introduced automatically regulates the delivery for twisting and spooling, so that uniform tension is preserved in both operations, while the wire is reeled and accumulating upon the spool. No such effective device appears prior to that of Bates, and the want of it was well recognized as limiting the speed and reliability of the operation. With the Bates device the production was increased about 50 per cent., and the machines under the patent came into extensive use and popularity.

In the Bates machine the upper wheel, $C^5$, is an oscillating wheel, mounted on a swinging arm, $C^2$, oscillated by the crank roller, C. The middle wheel, $C^6$, has stationary bearings and is "the positively-driven wheel," while the lower wheel, E, is an idler mounted on a yielding arm, $E^1$, provided with a spring, $V^1$, so that it will yield to and fro as the wire passes to the twister. In the appellee's machine the three wheels are alike in general location, aside from individual function—the upper wheel oscillating, the middle wheel on stationary bearings, and the lower wheel on a yielding arm provided with a spring—with like function of the combination in conveying the barbed wire to the twister and spooler. The departures from the patent specifications, upon which the defense relies, are these: (1) Instead of driving the

middle wheel, the power is applied to the lower wheel, so that it becomes "the positively-driven wheel," and in this view it is mounted on a swinging arm attached above the wheel, instead of below, with the spring transposed accordingly, while the middle wheel is made the idler, which is, in the language of the appellee's brief, "exactly the reverse of the case of the Bates patent"; and (2) while the lower wheel of Bates serves as an indicator of the tension for the operator to make adjustment with the friction brake, the appellee attaches the cord of the brake to the yielding arm, so that the motion of the arm automatically effects the adjustment.

1. The first-mentioned transposition of the functions of middle and lower wheels plainly evades the specific form of the combination described in the patent. It is true, as urged on behalf of the appellee, that it has "no middle positively-driven stationary" wheel, "no lower yieldingly mounted idler" wheel, and "no yielding butterfly-wheel arranged between the positively-driven wheel and the spooler." With the power transferred to the lower wheel and the middle wheel used as the idler, these descriptions are, of course, inapplicable, except in like reverse order, though the several elements and advantages of the patent combination are substantially appropriated. Obviously this change involves mere mechanical rearrangement of the driving means and yielding arm, and no difference in principle or result of the combined means and operation. The contentions that the alleged infringement is not an adaptation of the Bates three-wheeled combination, but is founded upon and follows the teachings of the two-wheeled combination of the prior Edenborn & Griesche patent (No. 270,646), and that it is, substantially, a new two-wheeled combination, are without merit. True it is that the unsuccessful device of Edenborn & Griesche shows two butterfly-wheels, one of which oscillates and the other is stationary and positively driven; but the third wheel of Bates' device with its yielding-arm provision and results—conceded by the appellee's expert to be novel and "substantive improvement"—neither appears nor is suggested in that patent. This essential element of the combination is equally distinguishable in the appellee's machine for like effect, and is plainly derived from Bates. The three wheels are actually used in the alleged infringing machines, as equivalent means for equivalent objects, so that it is unnecessary to consider whether its idler wheel can be taken out and leave the machine operative, minus the function of the idler. If infringement thus appears, the owner of the patent cannot be denied relief, though protection may be limited by the terms of the claims to such three-wheel form. Du Bois v. Kirk, 158 U. S. 58, 66, 15 Sup. Ct. 729, 39 L. Ed. 895.

The conception of Bates was not pioneer invention in the broad sense of the term, and the mechanism described in the patent was merely an improvement upon old wire-barbing machines. Nevertheless the invention was meritorious—a marked advance in that art, and of unquestionable utility—so that the patentee is not only entitled to protection of his monopoly against colorable evasions, but, for such protection, is entitled as well to the benefit of the doctrine of equivalents, commensurate with the invention disclosed, though not of the broad range which is accorded

an invention of primary character. Miller v. Eagle Manufacturing Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, 38 L. Ed· 121, 12 Notes U. S. Rep. 487; Bundy Manufacturing Co. v. Detroit Time-Register Co., 94 Fed. 524, 540, 36 C. C. A. 375; National Hollow Brake Beam Co. v. Interchangeable B. B. Co., 106 Fed. 693, 710, 45 C. C. A. 544.

We are of opinion that the means thus transposed in the appellee's machine, if not within the definition of colorable evasions which infringe the patent in any view of its scope, are plain appropriations of the essence of the Bates conception by equivalent means, and infringements of the patent within the well settled rule referred to. All the elements of the patent combination are employed with substantial identity in their use, and departure appears from the letter of the claims only, in the arrangement of these elements, without substantial difference in the principle of operation. The policy and rules of the patent law require that the patentee be protected against such evasions of the wording of a claim in form or nonessential details, when the substance of the invention is thus used and is unmistakably shown in the specifications and claims. Winans v. Denmead, 15 How. 330, 343, 14 L. Ed. 717, 5 Notes U. S. Rep. 331; Ives v. Hamilton, 92 U. S. 426, 431, 23 L. Ed. 494; Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; and 9 Notes U. S. Rep. 533; Elizabeth v. Paving Co., 97 U. S. 126, 137, 24 L. Ed. 1000; Hoyt v. Horne, 145 U. S. 302, 308, 12 Sup. Ct. 922, 36 L. Ed. 713; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 568, 18 Sup. Ct. 707, 42 L. Ed. 1136; International Mfg. Co. v. H. F. Brammer Mfg. Co. (C. C. A.) 138 Fed. 396, 400.

The form in which the middle and lower wheels respectively are arranged for use in the combination is not of the essence of the invention. Patentability resides in the combined use of the wheels, and to adapt one or the other to be driven, for the object in view was incidental only—a matter of mere mechanical choice and skill. To change the driving function from the stationary (middle) wheel to the yielding (lower) wheel corresponding changes of equipment to that end were, of course, needful, as exemplified in the appellee's structure; but there is no substantial departure in principle or idea of means for the combination. With such "necessary rearrangement of the driving mechanism," it is admitted in the testimony of the appellee's expert that the yielding wheel of the Bates device can be made the driven wheel (while the middle wheel becomes the idler), and thus "operate as well as in the construction shown in the patent," and that no reason appears why the "defendant's machine would not operate perfectly" with the middle wheel "made the positively-driven wheel."

Interchangeability is referred to in Miller v. Eagle Mfg. Company, supra, and other cases cited in the argument on behalf of the appellee, as an "important test in determining the question of infringement," and it is contended that the interchangeability of parts and functions thus conceded does not meet the requirements for such test, upon the assumption that the interchange involves substantial reorganization of one and the other structure. This contention is without force, under our conclusion that these deviations are plain equivalents within the scope of the patent, and do not depart substantially from the invention. If the test

is applicable to such cases of recombination, the corresponding arrangement of means is essential for its application, and in that view interchangeability appears for any value it may have in solving the issue. While the middle wheel is deprived of its function as a driven wheel, in the changed structure, it retains the function of regulating the tension of the wire in connection with the action of the top (oscillating) wheel, and is so employed in the alleged infringement. It is immaterial whether this benefit is of less importance in the appellee's structure, or whether the machine can be made operative without this wheel (Du Bois v. Kirk, supra), as difference in the degree of benefit will not authorize such use nor establish want of identity, in the sense of the patent law, of the means so combined. Moreover, in the Fredrich patent (No. 711,303), under which justification is sought for its use, this wheel is made an element of the claim and described as "a fixed intermediate guide-wheel over which the barb-wire travels for intermittently feeding the wire."

The further argument that noninfringement must be presumed from the grant of the above-mentioned Fredrich patent is equally unsound upon the foregoing view of substantial identity in fact. Any inference so arising is, of course, rebuttable, and is rebutted in the present instance, as we believe, not only by the evidence referred to, but in the fact that subordination to the patent in suit appears to be expressly recognized in the proceedings upon the Fredrich application, as shown in the file contents in evidence. On rejection of the original broad claims in that application, for conflict with the Bates patent, such claims were amended upon representation that the invention "was an improvement over the construction of Bates."

2. The remaining contention, that the appellee's device escapes infringement through its additional means and function in the automatic regulation of tension, does not impress us as tenable, under our conclusion that the three-wheel combination of the patent is appropriated, with all its results, as an entirety. In the testimony of one of the experts for the appellee the sole distinction between the devices in this feature is stated in plain terms. After mentioning the difficulties which had arisen in making barbed wire from want of uniformity in tension as the spooling progressed, the witness states: These evils "are corrected in the Bates machine" by "a rope, $b^1$, which passes to the friction brake, $x^1$, and is operated by the workman, in accordance with the indication afforded by the movement of the swinging spring-held arm which carries the third butterfly wheel"; while in the appellee's machine "these same evils are corrected by a like rope which passes to the friction break," and instead of operation by the workman, upon the indication given by the swinging arm, such arm "not only indicates the difference in tension, but automatically, with such indication, pulls the rope." This is a mere addition to the patented machine, supplementing the function of one element, without changing the co-operative function of the wheels in their combination. So, assuming that it is an important improvement (which is disputed in the appellant's testimony), and patentable as an improvement, its association with the means of the prior patent is unauthorized without license from such patentee. Cochrane v. Deener, 94 U. S. 780, 787, 24 L. Ed. 139; Cantrell v. Wallick, 117 U. S. 689, 694, 6 Sup. Ct.

970, 29 L. Ed. 1017; Hoyt v. Horne, 145 U. S. 302, 309, 12 Sup. Ct. 922, 36 L. Ed. 713; Walker on Patents (3d Ed.) § 347.

The alleged improver may have a valid patent for his new means, and is entitled to its exclusive use; but the prior patent equally excludes him from the use of the prior invention, with or without his improvement. As expressed by Mr. Justice Bradley, in Cochrane v. Deener, supra, he cannot appropriate the earlier invention, "even though supplemented by and enveloped in very important and material improvements" of his own. Each has the right to enjoy the monopoly awarded by his patent, but cannot be permitted to invade the limits of the other's invention and patent privilege. The object of the law authorizing the grant is to stimulate invention by this reward to the inventor. It must be administered in conformity with this liberal policy, as a wise exception from the common-law rule against monopolies. So the exclusive privilege of the patentee must be protected to the full extent of his invention and grant, while its limitations are to be strictly observed, to prevent interference, beyond the fair scope of valid grant, with improved means or other inventions, the promotion of which is the constant view of the patent policy. Within such limitations, however, the exclusion applies equally against the improver and the general public, and we are of opinion that the alleged improvement does not escape the patent.

The decree of the Circuit Court is reversed accordingly, with direction to enter a decree in favor of the appellant in conformity with this opinion.