### GUNN et al. v. BRIDGEPORT BRASS CO.

(Circuit Court, S. D. New York. July 5, 1906.)

**1. PATENTS—ANTICIPATION.**

A patent is not anticipated by prior patents for devices which might by slight modifications have been made to perform the functions of that of the later patent, where it does not appear that the patentees had in mind their use or adaption to accomplish such result.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 81.]

**2. SAME—INFRINGEMENT—CARD RECORDS.**

The Gunn patent, No. 583,227, for a system of card records, claims 1, 2 and 3, were not anticipated, and cover a meritorious improvement over prior systems which involved invention. Also *held* infringed.

In Equity.

Gifford & Bull and Roberts & Mitchell (Livingston Gifford and Odin Roberts, of counsel), for complainants.

Morris W. Seymour and Fred L. Chappell, for defendant.

.HAZEL, District Judge. This bill in equity is based upon the alleged infringement of claims 1, 2, and 3 of letters patent No. 583,227, dated May 25, 1897, issued to James N. Gunn, for an improvement in card records. The complainants, Gunn & Stanford, are the owners of the patent; the Library Bureau being exclusive licensee under the same. The proofs show that the patentee conceived the invention in March, 1892, and disclosed the same to others. He cut out by hand a set of record cards in the shape or contour described in the specification and afterwards endeavored to have a supply cut by machinery, but special dies were necessary for this object, and, owing to lack of finances, he was unable to then exploit or patent the invention. The date of invention, therefore, may be considered to have been in the month of March, 1892. The claims relate to a series of record or contour cards, in combination with division or index cards, each card being provided with a projection or so-called "tab," depression, or other distinguishing feature or contour at their upper edges; the distinguishing portions being differently positioned on said cards, whereby they may be collected and suitably arranged into distinct groups or subrecords. The novelty of the invention apparently consists in the arrangement of the record cards in longitudinal series and their classification laterally by means of tabs. The cards when assembled and in combination with the index cards are usually placed in a rectangular drawer or box, and held loosely upon a removable rod extending lengthwise of the receptacle. The cards are ordinarily used to conveniently and systematically enter thereon data, names, accounts, or information desired for ready reference. Claim 1 reads:

"1. A series of record cards distinguished in groups by having distinguishing portions differently positioned on the cards of different groups, similar distinguishing portions being similarly positioned on all of the cards of the same group, combined with division, or index cards arranged at intervals there through as desired, whereby corresponding records may be seen by observing the similar distinguishing portions falling longitudinally in line one behind the other, in whatever order or however arranged the cards may be, substantially as described."

Claim 2 epitomized describes an arrangement of the cards relative to a plurality of groups of records; each group being easily recognized or selected by means of the location of their respective distinguishing portions, as stated in the claim, thus enabling ready use of the cards in connection with the system of indexes. Claim 3 is broadly for the record cards having the contour described in the specification, viz., cards provided with projections, depressions, or other distinguishing feature along their edges, irrespective of serial division cards. The fourth claim, which is not involved, relates to cards of different color to further distinguish the subject of the record. The single defense urged is that the claims in controversy are invalid. Formerly in trade and commerce a reference book or series of pages with alphabetical indexes, or series of cards with guide cards having projections at their upper edges, were used for the purpose of collecting data, facts, and information, the use of which necessitated turning over the pages and often involved an examination of a large number of pages or cards to ascertain the facts or information written thereon. Division cards

with projections at their upper edges were old. Cards with clipped corners were also familiar at the date of the invention. The patentee, after briefly describing and acknowledging the prior art in explanation of its inefficiencies, says:

"For many purposes, however, a subdivision or classification carried one or more steps beyond what is possible with the usual division-cards is desirable, such, for instance, as subdividing one or more times the cards referred to: but such further subdivision has heretofore been considered impracticable, because the usual division cards, constituting the only heretofore recognized means of grouping or subdividing a card record, cannot be used to advantage, owing to the absence of any distinguishing feature or features over and above the record cards other than the one of their greater height. In other words, the usual division cards can be used to any extent for any single kind of subdivision, but never for more than a single kind of subdivision in the same record."

Hence the object of the invention was, first, to provide a method for subdividing the subdivisions and make them easily accessible and distinguishable one from another, so that a multiplicity of records relating to different matters could be kept; and, second, to arrange the cards so that a record, auxiliary to the main record, is maintained regardless of any writing on the cards, this being accomplished by the patentee's method of positioning the cards bearing distinguishing marks. By the method adopted for positioning a large number of cards provided with projections or tabs on their peripheries, the user of the card record at a glance down the row of classified cards, is enabled to find a tabulated subject without examination of the face of the card. And this is accomplished even though the tabs or projections are located in different positions on the cards; the entire arrangement being such as to permit the cards with projections of like position to come in position behind each other in parallel alignment. To facilitate and enlarge the usefulness of the general plan, movable guide or index cards, differently shaped and easily distinguished from tab cards, though also provided with projections, are used as an index to alphabetical or numerical recording. Their function is quite different from that of the tab cards. They serve merely as a medium for separating or subdividing portions of the record cards, while the tab cards indicate the tabulated subject of the individual or record cards. The essence of the invention rests in the contour or profile of the cards containing the distinguishing feature to which attention has been directed and the manner of positioning them. The prior art is differentiated from the arrangement of the card record in suit in that formerly the record was made by simply writing on cards without any special features thereon; that is, without contours enabling serial classification.

Counsel for defendant contends that, as the grouping of cards together with tab cards was known to the art at the date of the invention in suit, the manner of positioning the tab cards in series, being simply a new use of a well-known feature, clearly lacks patentability. I am unable to subscribe to the correctness of this contention. Complainant's manner of positioning the cards and arranging the tab cards was a meritorious improvement, as an examination of the exhibits

148 F.—16

found in the record will disclose. That any information written or printed on complainant's cards may be found with much greater facility than in former devices cannot safely be controverted. The user of the card record has quick access to a variety of subjects; a mere visual inspection of the top of the cards giving him the key to the subject tabulated. The advantages and results obtained by the Gunn system of card files, as is evidenced by the proofs, are valuable and important. Many prior patents for cards, indexes, and files for keeping records have been introduced in evidence by the defendant as anticipatory of the patent in suit or indicating that to one skilled in the art the exercise of inventive qualities was not necessary to attain the same result. The evidence satisfies me, however, that Gunn's manner of assembling and positioning the tab cards was conceived and made practicable after experimental effort and the exercise to a slight degree at least of the inventive faculty. There are several prior patents which perhaps could have been modified and easily changed to attain the result achieved by the Gunn system; but, it not appearing from the exhibit patents in evidence that the patentees had in mind the adoption or use of their inventions to the accomplishment of a similar function as that of complainants' patent, I think the claims 1, 2, and 3 of the latter should be sustained. Brill v. Third Ave. R. Co. (C. C.) 103 Fed. 289; Cawood Patent, 94 U. S. 695, 24 L. Ed. 238; Ryan v. Newark Spring Mattress Co. (C. C.) 96 Fed. 100. The patents to Thomas, Northrup, and Stamford are a close approach to the Gunn invention, but they are of later date, and therefore require no attention.

The involved claims being held valid, and infringement not being denied, a decree may be entered for complainants, with costs.