STEBLER v. RIVERSIDE HEIGHTS ORANGE GROWERS' ASS'N et al.

(Circuit Court of Appeals, Ninth Circuit.    June 12, 1913.)

No. 2,232.

1. PATENTS (§ 72*)—ANTICIPATION—COMBINATION.

It is not sufficient, to constitute an anticipation, that the devices relied upon might, by a process of modification, reorganization, or combination, be made to accomplish the function performed by the device of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 86–91; Dec. Dig. § 72.*]

2. PATENTS (§ 62*)—ANTICIPATION—EVIDENCE.

On the question of anticipation, the fact that the patented device is so far different from those of the prior art that it has superseded them in general use is entitled to great weight.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. § 62.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—FRUIT GRADER.

The Strain reissue patent, No. 12,297 (original No. 730,412), for a fruit grader, for assorting fruit with reference to size, was not anticipated, and discloses invention; also held infringed by the machine of the Parker patent, No. 997,468.

4. PATENTS (§ 239*)—INFRINGEMENT—ADDING IMPROVEMENTS TO PATENTED DEVICE—"INFRINGER."

One who appropriates another's patented invention, though he may add thereto another element to perform an additional function, is an "infringer."

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 377, 378; Dec. Dig. § 239.*

For other definitions, see Words and Phrases, vol. 4, p. 3594.]

5. PATENTS (§ 176*)—INFRINGEMENT—LIMITATION OF CLAIMS—"END TO END."

The expression "end to end," used in a patent claim in describing the relative position of rollers, does not necessarily require that there shall be no longitudinal space between the ends of the rollers, nor impose a limitation which will enable another to avoid infringement by leaving a space between them, where it does not change their function or mode of operation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250¾–252; Dec. Dig. § 176.*]

Appeal from the District Court of the United States for the Southern District of California; Olin Wellborn, Judge.

Suit in equity by Fred Stebler against the Riverside Heights Orange Growers' Association and George D. Parker. Decree for defendants, and complainant appeals. Reversed.

Frederick S. Lyon, of Los Angeles, Cal., for appellant.

N. A. Acker, of San Francisco, Cal., Wm. M. Hiatt, of Los Angeles, Cal., and H. L. Carnahan, of Riverside, Cal., for appellees.

Before GILBERT, Circuit Judge, and WOLVERTON and DIETRICH, District Judges.

DIETRICH, District Judge. The appellant, as the owner of reissue letters patent No. 12.297, granted to Robert Strain December 27, 1904,

brought this suit to enjoin alleged infringement. The invention is a machine for grading or assorting fruit with reference to size, and is presently useful chiefly in the orange industry, where, in order to secure a uniform pack, it is necessary that all oranges in a box be practically of the same size. Assortment by hand is too slow and inaccurate, and hence the need of a mechanical device.

The claims alleged to have been infringed are 1 and 10, which are as follows:

Claim 1:

"In a fruit grader, in combination a plurality of independent transversely adjustable rotating rollers, a nonmovable grooved guide lying parallel with the plane which passes vertically and longitudinally through the center of said rollers, said rollers and guide forming a fruit runway, a rope in the groove in said guide, and means to move said rope."

Claim 10:

"In a fruit-grading machine, a runway formed of two parallel members, one of said members consisting of a series of end to end rolls, brackets carrying the rolls, guides for the brackets, and means for adjusting the brackets upon the guides, substantially as set forth."

The defenses are invalidity of the claims, through anticipation of the combination thereby called for, and noninfringement.

The issue can be more clearly and concisely explained by a reference to the state of the art when the patent was issued. There was at that time in practical use what was commonly known as the California grader, based upon a patent (No. 458,422) granted to J. T. Ish, August 25, 1891. The essential members of this device were (1) a long horizontal roller, with graduated sections or steps, turned down from a large diameter to a smaller one, resembling an inverted telescope; and (2) a flat endless belt, so adjusted that it was longitudinally parallel with the axis of, but a little lower than, and with a slight lateral inclination from the horizontal toward, the roller. The oranges were fed or delivered at a point near the large end of the roller, and by the moving belt were carried along, with one side resting upon the belt and the other upon the roller, until a point was reached where the space between the edge of the belt and the roller section was large enough to permit them to fall through into bins or receptacles provided for that purpose. It will be seen that thus the oranges of the smallest size were first eliminated, and then those a little larger, and so on; the largest being carried to the largest opening, which, of course, was opposite the smallest and last step. Inasmuch as the roller rotated upward and outward, the oranges could not be caught and squeezed, but were constantly turning different sides to the opening between the roller and the belt, through which there was a tendency to escape as soon as a point was reached where the aperture was larger than the smallest diameter of the orange. Means were employed to give the belt rigidity, and not uncommonly a round belt or "rope" resting in a groove was used; but these were doubtless mechanical equivalents, and the variations in this respect are not thought to be of importance.

While efficient beyond any device theretofore invented and of great practical value, in actual use the Ish machine disclosed certain weak-

nesses or defects. It was wanting both in adaptability to fluctuating grade sizes and adjustability in relation to bin space for the assorted fruit. It is obvious that, if the sorting is dependent upon and controlled by the several steps of a single roller, the grade spaces must sustain fixed and unalterable relations to each other. While possibly the operator might increase or diminish the size of all the spaces alike by increasing or diminishing the distance between the belt and the roller, he could not alter the width at one step without in like manner altering it at all other steps. And necessarily the precise difference in size between the several grades could not be left to the option or discretion of the packer, but must be predetermined by the manufacturer of the machine, for if the step down in the roller is one-half inch or one-fourth of an inch, the difference between the sizes of two successive grades must likewise be one-half or one-quarter of an inch. One lot may run largely to one size, and another lot to a different size. It follows that if the roller in the Ish machine was graduated for nine sizes, and if of a given lot of oranges one half were of one such size and one of another, the corresponding bins would be congested, while other bins would receive little, if any, of the fruit. In the operation of packing it is necessary that the oranges be assorted, not only according to size, but also according to quality, and this latter process must be performed by hand. They must also be wrapped in paper and placed in boxes. Each size being handled separately, one of the problems is to provide adequate bin space to give access for the requisite number employed in these several operations. If the bins were of equal capacity, and the run happened to be confined to two or three sizes, the number of attendants having access to such bins might be too small to handle and pack the fruit and keep the machine from clogging, while those attending other bins would have little, if anything, to do. If under such conditions a part of the dominant grade could be carried forward and delivered into other bins, the difficulty might be obviated. Some relief was secured by elongating the runway, through the use of two or more graduated rollers, instead of one; but the expedient was not wholly satisfactory, even in solving the problem of bin space, and in no wise affected the objectionable fixity of grade relations.

In this state of the art Strain conceived the invention covered by the claims in suit. In effect it may be described as a modification of or addition to the Ish machine, by cutting the roller into as many pieces as there are steps, and separately mounting them, all in line longitudinally, each being independent and transversely adjustable. More accurately, several short rollers of uniform diameter are arranged in line, to take the place of the one long graduated roller of the Ish machine, and the required grading space in the case of each roller is secured by adjusting the roller toward or from the traveling belt. It is apparent that with such a construction the rollers may be so arranged as to form a true alignment, and the grading aperture thus be made of uniform width throughout the entire length of the runway, or they may be so adjusted that the opening has as many widths as there are rollers, or for half the distance it may be of one width and the other half another width, and so on. As a consequence, the

operator may at will adopt such grade sizes as he sees fit, and, subject, to certain limitations, may deliver any size into any bin.

[1] The invention, we think, was an important and distinct advance in the art, and is not anticipated by former patents. Those chiefly relied upon for this defense are the Ish patent, already referred to, the patent to Bailey, granted April 9, 1901 (No. 671,646), and one to Hutchins, granted July 14, 1891 (No. 456,092). Enough has already been said of the Ish machine to make it apparent that as to it plaintiff's invention was a substantial improvement and not without patentable novelty. It is not deemed necessary to describe in detail the Bailey and Hutchins devices. They are not infringed by the plaintiff's claims. True, we may pick out one similarity in one of these devices, and one in another, and still one in another, and, by combining them all, anticipate the inventive idea expressed in the Strain patent, but the combination constituting the invention is not found in any one of them. As we had occasion to say in Los Alamitos Sugar Co. v. Carroll, 173 Fed. 280, 97 C. C. A. 446:

"It is not sufficient, to constitute an anticipation, that the devices relied upon might, by a process of modification, reorganization, or combination, be made to accomplish the function performed by the device of the patent." Western Elec. Co. v. Home Tel. Co. (C. C.) 85 Fed. 649; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Gunn v. Bridgeport Brass Co. (C. C.) 148 Fed. 239; Ryan v. Newark Co. (C. C.) 96 Fed. 100; Simonds R. M. Co. v. Hathorn Mfg. Co. (C. C.) 90 Fed. 201–208; Gormully & J. Co. v. Stanley Cycle Co. (C. C.) 90 Fed. 279; Merrow v. Shoemaker (C. C.) 59 Fed. 120.

[2] Neither the Bailey nor the Hutchins invention seems ever to have gone into practical use; and the Ish grader has been wholly or almost wholly, superseded by the plaintiff's machine—a fact to which great weight is to be given. Morton v. Llewellyn, 164 Fed. 693, 90 C. C. A. 514; Wilkins Shoe B. Co. v. Webb (C. C.) 89 Fed. 982; Krementz v. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558; Western Elec. Co. v. Chicago Co. (C. C.) 14 Fed. 691; Star Brass Co. v. Gen. Elec. Co., 111 Fed. 398, 49 C. C. A. 409; Union Biscuit Co. v. Peters, 125 Fed. 601, 60 C. C. A. 337; St. Louis Flushing M. Co. v. American Co., 156 Fed. 574, 577, 84 C. C. A. 340; Robbins v. Dueber Watch Case Co. (C. C.) 71 Fed. 186. It is accordingly held that the defense of anticipation is not sustained.

[3] It remains to consider whether or not the claims in suit are infringed by the defendants' machine. Apart from the roller side or member of the runway, admittedly their machine (the Parker patent, No. 997,468) is in all material respects like the Ish and Strain patents. It has the same oblique or inclined moving belt for the carriage of fruit, and is operated in substantially the same manner. As in the Strain invention, the other wall or side of the grading space or aperture is made up of a short independent roller rotating upward and outward to avoid pinching the oranges; also, like the Strain machine, this roller is mounted upon brackets of its own, and is transversely and independently adjustable at the will of the operator; but, unlike the Strain machine—and here is the one and the only substantial distinction—these rollers are also longitudinally adjustable, and are ac-

companied with extensible guide arms to fill in the spaces between the roller units when they are set at a distance from each other, the guide arms and the rollers thus constituting one continuous side or wall of the runway. There may be other differences in respect to mechanical equivalents and details of construction, but nothing that serves substantially to differentiate the two devices. If the charge of infringement is not sustained, therefore, it must be because of the longitudinal adjustability of the roller units in the defendants' machine, taken together with the overlapping or extensible guide arms used therewith.

That this is a novel and patentable improvement is conceded by the plaintiff, but he contends that it is only an added element for an additional function, and that therefore it cannot operate as a warrant for the appropriation by the defendants of his patented invention; and this contention we think must be sustained. That every essential element of the Strain invention is found in defendants' machine cannot be questioned. So far as the sorting or separating of the fruit into desired sizes is concerned, precisely the same result is reached by the use of the same means operating in the same manner. The truth of this proposition is strikingly illustrated in appellant's brief by a cut of defendants' machine as it appears with the guide arms eliminated and the several roller units brought into close proximity. In this form there is perfect equivalence, if not absolute identity. It exhibits the complete combination called for by the claims in suit without modification or addition, and the infringement is clear.

[4] The only question, therefore, is whether the longitudinal extensibility of the defendants' device operates to avoid the charge of infringement, and this question must be answered in the negative. The defendants have appropriated the plaintiff's invention, the essence of which is the combination with a traveling belt (common to the Ish, Strain, and Parker machines) of a series of independent rotating units arranged in longitudinal succession parallel with the belt, each transversely adjustable. One who appropriates another's patented invention, even though he may add thereto another element to perform an additional function, is guilty of infringement. Powell v. Leicester Mills Co., 108 Fed. 386, 47 C. C. A. 416; Letson v. Alaska Packers' Ass'n, 130 Fed. 129, 64 C. C. A. 463; American Can Co. v. Hickmott Co., 142 Fed. 141, 146, 73 C. C. A. 359; Columbia Wire Co. v. Kokomo Co., 143 Fed. 116, 74 C. C. A. 310; Comptograph Co. v. Mechanical Acct. Co., 145 Fed. 331, 337, 76 C. C. A. 205; Corrington v. Westinghouse Co. (C. C.) 173 Fed. 69, 81; Weston Elec. Inst. Co. v. Whitney Co. (C. C.) 131 Fed. 280; Diamond Match Co. v. Ruby Match Co. (C. C.) 127 Fed. 341; Benjamin Elec. Co. v. Dale Co., 158 Fed. 617, 85 C. C. A. 439; O'Leary v. Utica & Mohawk Co. (C. C.) 139 Fed. 330; L. J. Mueller Co. v. Groeschel (C. C.) 166 Fed. 917; Long v. Noye Mfg. Co. (C. C.) 192 Fed. 570. In Cimiotti Unhairing Co. v. American Unhairing Mach. Co., 115 Fed. 498, 504, 53 C. C. A. 230, 236, the Circuit Court of Appeals of the Second Circuit uses the following language:

"The mere fact that there is an addition, or the mere fact that there is an omission, does not enable you to take the substance of the plaintiff's

patent. The question is, not whether the addition is material, or whether the omission is material, but whether what has been taken is the substance of the invention."

True, the plaintiff's rights do not extend beyond the claims in suit, and are subject to the limitations thereof; but the language of these claims is not, as argued by the defendants, to receive a narrow, literal construction. While the invention is not basic or primary, it is substantial and important, and is therefore entitled to a fair range of equivalents. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122.

[5] Defendants appear to attach great importance to the phrase "end to end," as used in claim 10, as a limitation upon the grant expressed in plaintiff's letters patent; but we are unable to yield to the construction contended for, which seems to us to be strained and unnecessarily strict. Surely by "end to end" the patentee could not have intended unbroken continuity of roller axes, or perfect contiguity of roller ends. Such a structure would in one aspect be wholly incompatible with the idea of independent, transverse adjustability, and, in another, mechanically impossible. The necessary adjustment of the rollers for any practical work unavoidably breaks the axis continuity of the series, and there must be some degree of longitudinal end separation to give room for the mounting or bearing brackets. Who shall say, then, to what extent the rollers may be out of line or longitudinally separated, and still be "end to end"? Or who shall say how close together the rollers in defendants' device may be, and not be "end to end"? May the latter be separated by a guide two or four inches in length, and still escape this characterization? The questions serve to emphasize the reasonableness, if not the necessity, of construing the phrase as the expression only of an intention to include and claim the longitudinal arrangement of a series of rollers, and to differentiate and disclaim other combinations, such as, for instance, that in the Hutchins invention, where the rollers are arranged parallel to each other and one above the other. This we believe to be a fair construction of the language, and it is therefore adopted.

For the reasons stated, the decree of the lower court is reversed, and the cause remanded, with instructions to grant the relief prayed for.