AMERICAN CAN CO. v. HICKMOTT ASPARAGUS CANNING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 8, 1905.)

No. 1,190.

1. PATENTS—INFRINGEMENT—CAN-BODY MAKING MACHINE.

The Jordan patent, No. 436,792, for a can-body making machine, while not a pioneer patent in the sense of describing the first machine for making can bodies, covers the first in which a rotary horn was used for bending and clamping the sheet from which the can is made, and the invention constituted a highly meritorious improvement which marked a distinct advance in the art, and entitles the patent to the protection of the doctrine of equivalency in proportion to such advance. As so construed, claims 64 and 69 are infringed by the machine of the Eldridge patent, No. 712,998.

2. SAME—CONSTRUCTION OF CLAIMS.

The words "substantially as specified," at the end of a claim for a combination, refer to the whole claim, and import nothing into it not already there, either to narrow it so as to escape anticipation, or to broaden it so as to establish infringement.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 253.]

3. SAME—INFRINGEMENT—CAN-BODY MACHINE.

The Holden and Brown patent, No. 598,567, for a can-body machine, held not infringed by the machine of the Eldridge patent, No. 712,998.

Appeal from the United States Circuit Court for the Northern District of California.

See 137 Fed. 86.

The appellant, as the owner of certain patents, brought its suit against the appellees for infringement. The patents are: (1) No. 436,792, issued September 23, 1890, to Peter Jordan for a can-body making machine; (2) No. 365,316, issued June 21, 1887, to Edwin Norton, for a can-cap soldering machine; (3) No. 598,567, issued February 8, 1898, to E. P. Holden and C. M. Brown for a can-body machine. These patents all relate to machines for manufacturing tin can-bodies. The Jordan patent relates more particularly to the formation of cylindrical can-bodies without tops or bottoms. The other two patents, so far as the claims sued on are involved, relate to the soldering operation. In the Jordan machine the tin blanks which are to be formed into

can-bodies are stacked in a mass, and are automatically released one at a time to the can-forming mechanism. The material parts of the mechanism are shown in the figures 1, 2, and 3. These figures show as a primary and fundamental element a horn, G, pivoted and centered so as to be capable of rotary motion; a device, F, called a "former," having at its extreme end a small projection, marked "f." In figure 1 the tin blank is shown with one of its edges caught behind the projection, f. A hook on the opposite end of the blank has already been formed by a mechanism not involved in the suit. As soon as the tin sheet or blank is caught by the projection, f, the former, F, turns downward, and by pressing the tin against the die, F¹, forms a hook on the blank, as shown in figure 2. The horn is then rotated, and the rotation causes the tin to be wrapped around the horn until it assumes the position shown in figure 3, in which the hooks of the two edges of the blank have been brought loosely into opposite engagement with each other. The bumper or squeezer, marked p¹, presses the hooks together, thereby forming a securely locked seam.

Fig. 5

Fig. 6

Fig. 7

The appellee's patent, under which infringement of the Jordan patent is alleged, is the Eldridge patent, No. 712,998, dated November 4, 1902, shown by the figures 4, 5, 6, and 7. The Eldridge machine has a long rotatable horn containing a longitudinal groove, which gradually tapers to the extreme end of the horn, where it vanishes. The groove is designated by the figure 5. The letter, 3, designates the table on which the blanks are placed, and one of these blanks is designated by the letter, a. Overhead is the shaping or forming edge or blade, d. This edge is caused to descend at the angle shown in the figures, and it strikes the tin blank near its end, thereby bending it into the shape of a hook. The table, e, then recedes and leaves the end of the tin blank with the hook formed thereon pressed down into the cavity in the horn, where it is caught behind a sharp projection or tooth, designated in the testimony as an "undercut," represented by the figure 10. Immediately below this tooth, and resting in a cavity in the horn, is a metal block supported upon a spring which presses the block upwards, thereby causing it to hold the hooked end of the tin securely against the undercut, 10. The horn is then

rapidly rotated, and thereby the blank is wrapped around it. Figure 6 shows the blank so wrapped around the horn before the second hook has been formed. The opposite end of the blank is shown to have been brought underneath the edge of the forming blade. That blade now again descends and strikes the projecting end of the tin blank, thereby bending it downward so as to form a hook oppositely placed to the first hook, as shown in figure 7. The operation of pressing the hooks together in a seam is performed by a ring encircling the horn and moving longitudinally along it, thereby dragging the interlocked hooks through the groove, 5, and into the tapering or vanishing groove on the horn.

J. H. Miller, for appellant.
Wheaton & Kalloch, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the facts, delivered the opinion of the court.

· The broadest claim of the Jordan patent is claim 69. It reads as follows:

"The combination with a rotatable horn furnished with means for clamping the edge or end of the sheet thereto, of a device for holding the opposite edge or end of the sheet against the horn, and means for interlocking the hooks on the blank, substantially as specified."

In his specifications Jordan said:

"In the drawings I have shown that form of edge-folding or hook-making mechanisms, horn-bumping or seam-squeezing device, and blank-feed device which I prefer to use and to combine together for practicing my invention; but the construction of each of these several devices may be greatly varied by those skilled in the art without departing from the principle of my invention and the broader features thereof."

The question which is presented to us on the appeal is one of infringement only, and in determining that question it becomes necessary to consider the nature of the Jordan invention, and to determine how far it is protected against the use of mechanical equivalents. Prior to the Jordan patent, can-bodies were formed upon nonrotating fixed horns, which were hollowed out in their interior and provided with mechanism to cause them to expand. Hooks were first formed on the ends of the sheets of tin for the interlocking seams. The sheets were then placed transversely across the upper surface of the fixed horn, and were shaped around it by folding arms curved to fit the horn and to cause the hooks to come into engagement. Then by the expansion of the horn the hooks were interlocked. The term "mechanical equivalents" has a variable meaning, and is measured by the character of the invention to which it is applied. The appellant contends that the Jordan invention was pioneer. But we think it cannot be said that Jordan was a pioneer inventor in the sense that he was the first to produce a machine to successfully form can-bodies. He was the first, however, to form can-bodies by the use of a rotating horn. In so doing, he made a highly meritorious improvement, and an invention which marks a distinct step in advance in the progress of the art, and which has gone into extensive and successful use. His invention must be accorded a place in-

ferior, perhaps, to that of a primary invention, but far in advance of those which constitute but a slight improvement on the prior art. His claims, therefore, while not entitled to the broadest construction accorded to the former, are not to be restricted to the narrow construction applicable to the latter.   He is entitled to the protection of the doctrine of equivalency in proportion to the nature of the advance which his invention indicates.   In Penfield v. Chambers Bros. Co., 92 Fed. 630, 638, 34 C. C. A. 579, Judge Severens said:

"The rule applicable to the determination of equivalency depends upon the importance and the breadth of the original invention, and does not depend upon the question whether it was the first in the field relating to that subject, but upon the degree of advancement which the invention has made in newness of discovery and utility; for there may be as much merit in bringing on a large illumination from a feeble start as in the conception of the first beclouded idea which may have originated in the course of study and discovery along that line."

See, also, McCormick Harvesting Machine Co. v. Aultman, Miller & Co., 69 Fed. 371, 16 C. C. A. 259; Muller v. Tool Co., 77 Fed. 621, 23 C. C. A. 357; Letson v. Alaska Packers Ass'n, 130 Fed. 140, 64 C. C. A. 463; Miller v. Eagle Mfg. Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, 38 L. Ed. 121.

It is plain to be seen that the Jordan invention is not founded on the earlier art.   There was nothing in the preceding inventions to suggest the idea of a rotatable horn and of attaching the edge of a sheet of tin thereto and rolling it up in the form of a can-body.   His patent is entitled, therefore, to stand for what the claims import, free from limitations imposed by the prior art.

Applying the doctrine of mechanical equivalents so defined, it will be seen, on reviewing the elements of claim 69, that the appellees use the rotatable horn.   This is not disputed.   The next inquiry is whether the appellees' combination uses means for clamping the edge or end of the sheet to the rotating horn.   In order to roll up a sheet of tin in the form of a can-body, it is absolutely essential to attach one edge of the sheet to the rotating horn. This Jordan does by what he denominates in his machine a "clamp."   It is an adjustable band of iron which engages the unfolded edge of the tin and holds it fast against the horn. In the Eldridge patent the sheet is attached to the rotating horn, both by the inturned hook or undercut which engages the hook formed upon the sheet, and by the underlying cushion resting upon a spring which presses the sheet upward and holds it in position while it is being rolled up.   Is this a clamping device, or the mechanical equivalent of the clamping device in the Jordan patent, under the reasonably liberal construction to which the claim is entitled?   The definition of a clamp found in the Century Dictionary is as follows:

"An instrument of wood, metal, or other rigid material, used to hold anything, or to hold or fasten two or more things together by pressure so as to keep them in the same relative position."

The appellees certainly use a clamp to hold by pressure the edge of the sheet of tin against the rotatable horn, and we are unable to see that they can avoid the charge of infringement by showing that the clamp would be insufficient to hold the sheet in position without

the aid of the hook on that end of the sheet. The hook is essential, it is true; but so is the clamp. Referring to this clamping device, the appellees' expert witness, Kruse, admitted that it was "used for the purpose of wrapping the tin," but said that its principal use was to assist in making the first hook. The fact that it served an additional purpose is immaterial. In using the clamp with the hook the appellees come, we think, within the terms of the claim, and use means for clamping the end or edge of the sheet to the horn. They use these means for the same purpose for which the appellant's clamp is used; that is, to make a point of resistance, so that the sheet may be rolled around the horn in its revolution.

Turning to the third element of the claim, we find that the Eldridge patent has a device for holding the opposite edge or end of the sheet against the horn. This is the presser plate, f. As the horn is rotated, the sheet passes beneath the presser plate, f, and while, during the first portion of the rotation, it is not held absolutely in contact with the horn, it will be seen by the time the horn has made one-fourth of its rotation the contact is close to the horn and remains so until the revolution is stopped.

Fourth, the appellees' machine has means for interlocking the hooks on the blanks. It is true that the appellant's machine operates with a blank on which a hook has already been formed at the end opposite that of the initial engagement with the horn, and that the appellees' machine receives sheets of tin on which no hook has been formed. It is essential, however, to the making of tin cans that there be hooks on each end of the sheet for interlocking. In the appellees' machine, it is true, the second hook is made after the rotation of the horn is completed, but that fact is not material to the question of the infringement of the elements in claim 69. Whether the hook is formed before or after the revolution of the horn, it remains true that the appellees' machine has means for interlocking the hooks on the blank. They are different means from those adopted in the appellant's machine. The question arises whether infringement is thereby avoided. The appellees contend that the words in the claim "means for interlocking the hooks on the blank" are limited by the words which immediately follow, "substantially as specified." But those words refer to the whole claim, and import nothing into it not already there, either to narrow it, so as to escape anticipation, or to broaden it, so as to establish infringement. The words mean "substantially as specified in regard to the combination which is the subject of the claim" Lake Shore R. R. Co. v. Car-Brake Shoe Co., 110 U. S. 229, 4 Sup. Ct. 33, 28 L. Ed. 129. Of course, an inventor cannot by the mere use of the word "means," in reference to the accomplishment of a designated function in a combination claim, appropriate any and all kinds of mechanism or devices which may perform the specified function, or any other mechanism or device than that which is described in the patent or which is its equivalent. Reference must be had to the specifications to ascertain the means which are made an element of the claim and are protected by the patent. Dudley E. Jones v. Mun-

ger Imp. C. Machine Mfg. Co., 49 Fed. 61, 1 C. C. A. 158; Williams v. Steam Gauge & Lantern Co. (C. C.) 47 Fed. 322. In both the Jordan and the Eldridge patents the hooks are interlocked by exterior pressure, and in both they are interlocked by being pressed against the horn. In the Jordan patent the pressure is exerted by the bumper or squeezer, p. In the Eldridge patent it is done by an iron ring encircling the horn which slides upon the can-body. After the hooks have been brought into engagement around a horn their interlocking is the final step in the process of forming the can-body. It is obvious that this may be done by the use of one of many automatic devices, such as a hammer or roller or squeezer or a ring sliding over the hooks, all of which would readily suggest themselves to the mind of a skilled mechanic. The Eldridge device performs the same function as that of the Jordan device, and we are of the opinion that it performs it in substantially the same way, that the difference is not sufficient to avoid infringement, and that under the doctrine of equivalency applicable to this case the Eldridge device is the equivalent of the bumper or squeezer of the Jordan patent. Jordan in his specifications took pains to say that he had adopted the squeezing device, which he preferred, but that the device might be varied by those skilled in the art without departing from the principle of his invention. The Eldridge patent proves that this is true. An examination of the two patents carries the conviction that Eldridge has appropriated Jordan's inventive idea. It is the whole purpose of the doctrine of equivalency to protect the inventor against piracy and to secure to him the benefit of that which he has invented.

Claim 64 reads as follows:

"The combination, with a rotatable horn furnished with means for clamping one edge of the sheet, of a stop blade or device for engaging the opposite end of the sheet, substantially as described."

The only element of this claim which we have not already considered is a stop blade or device for engaging the opposite end of the sheet. We find in the appellees' machine a device for engaging the opposite end of the sheet. It is the plate, f. It is not the stop blade of the Jordan patent, but it is a device which answers the same purpose, and operates in substantially the same way. It engages and holds the end blank against the horn. A device to accomplish this function is essential to any machine which operates on the principle of the Jordan patent, and we think that this claim is infringed by the appellee.

As to the other claims of the Jordan patent involved in the suit, we agree with the Circuit Court that they are not infringed. It is unnecessary to review them all in detail. Claims 79, 80, and 81 omit the rotatable horn, and, limited as they are by the prior art, it must be held that the Eldridge patent does not infringe. The same may be said of claims 87 and 88, which omit the element of the clamping device whereby the sheet is attached to the horn. Claim 56 imports the element of a hook-forming device carried by the horn. The Eldridge horn does not carry a hook-forming device, and therefore does not

infringe. The same is true of claims 58, 59, 60, 62, and 63. Of claim 78 it is sufficient to say that the Eldridge horn does not carry a second edge-folding device, nor does it contain the guide-shoe specified in claim 65.

The appellant sues for infringement of the patent numbered 598,-567, dated February 18, 1898, issued to Edward P. Holden and Charles M. Brown, so far as that patent relates to a side-seam soldering machine. It is urged that claims 28, 29, 30, 31, and 32 are infringed. All of these claims call for a soldering horn on which the cans rest in the process of soldering their side seams. The specification describes the horn as composed of a cylindrical portion, H (Fig. 7), with three parallel strips supported therefrom to steady the can, provided with a groove in which the seam of the can travels. The invention is not a pioneer patent, nor does it approximate a pioneer invention. Limited as it is by the prior art, we are of the opinion from a careful consideration of its claims that they are not infringed by the appellees. In the Holden and Brown patent the soldering irons rest upon and are carried by the soldering horn. This is not true of the soldering irons of the Eldridge patent. In that patent the uppermost portion of the carrying frame is a strip which performs the function of a soldering iron to solder the inside seam of the cans and wipe the same, while the outside seam is soldered by the soldering irons carried above. The frame would be insufficient to carry the soldering irons of the Holden and Brown patent, and could not be substituted therefor. Instead of resting upon the soldering horn, as in that patent, the soldering irons are carried by cross-pins, which rest upon the bottom of the inside of the casing, 2. The Holden and Brown patent calls for a soldering-pot located in advance of the soldering-iron. It uses wire solder, of which sufficient is cut off to solder each can, and is dropped into the soldering-pot, where it is melted by a special burner directed against it. The appellees use a soldering-pot located above the soldering irons, and it carries molten solder, which is allowed to drip through a tube and through a hole in the forward soldering iron, which hole is placed some distance back from the end of the soldering iron, in order that the front portion thereof may heat the tin before the solder comes in contact therewith. It has no means for soldering or wiping the inside seam. The solder-feeding mechanism called for in the claims is not found in the appellees' machine. These differences in construction, in view of the prior art, are sufficient to distinguish the Eldridge from the Holden and Brown patent, and to avoid infringement thereof.

Involved in the suit is also the patent No. 365,316, issued June 21, 1887, to E. Norton, for a can-cap soldering machine, owned by the appellant. Alluding to the fact that this patent has expired, and no injunction could be granted against its infringement, counsel for the appellant admits that it is of very little moment to either party whether it be sustained or not. In view of that admission, we find it unnecessary to discuss the questions involved, more than to say that we find no error in the conclusion which was reached by the Circuit Court.

The decree of the Circuit Court is reversed as to claims 69 and 64 of the Jordan patent, and cause is remanded for further proceedings not inconsistent with this opinion.   In other respects it is affirmed.