### R. M. HOLLINGSHEAD CO. v. BASSICK MFG. CO.
### No. 6419.

Circuit Court of Appeals, Sixth Circuit.
Nov. 14, 1934.

544

F. S. Busser and Leonard L. Kalish, both of Philadelphia, Pa. (Burch, Minor & McKay, of Memphis, Tenn., on the brief), for appellant.

Lynn A. Williams, of Chicago, Ill. (Albin C. Ahlberg, Elwood Hansmann, and Williams, Bradbury, McCaleb & Hinkle, all of Chicago, Ill., and Lowell W. Taylor, of Memphis, Tenn., on the brief), for appellee.

Before MOORMAN and SIMONS, Circuit Judges, and RAYMOND, District Judge.

RAYMOND, District Judge.

This appeal involves the validity and infringement of claims 1, 2, 3, 4, 5, 6, 8, 10, 14, and 15 of Gullborg patent 1,307,734, issued June 24, 1919, for "lubricating means"; and of claims 2, 3, and 5 of Zerk patent 1,475,- 980, issued December 4, 1923, for "lubricating apparatus."

An appeal to this court from an order confirming a special master's report upon collateral issues and making permanent a preliminary injunction, but without determination of fundamental issues of validity and infringement, was dismissed. See R. M. Hollingshead Co. v. Bassick Mfg. Co. (C. C. A.) 50 F.(2d) 592, and R. M. Hollingshead Co. v. Bassick Mfg. Co. (C. C. A.) 53 F.(2d) 470. The cause was then submitted to the District Court upon the record made prior to the first appeal. This resulted in a decree that the sale of compressors and couplers of the type exemplified in Exhibit A filed with the affidavit of Beezley, and a similarly designated exhibit filed with the affidavit of Cumming, constituted infringement of the several claims of the Gullborg patent above enumerated, and, as to Zerk, that the sale of such compressors and Zerk adapters shown in Exhibit A filed with the affidavit of Cumming, was an infringement of the three claims of the patent here in controversy.

Many other occasions for consideration of these patents have arisen. In the case of Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F.(2d) 29, 35 (C. C. A. 6), the Gullborg patent was held valid as to claims 1, 2, 3, 4, 7, 8, 14, and 15, and invalid as to claim 12. In the case of Larkin Automotive Parts Co. v. Bassick Mfg. Co., 19 F.(2d) 944 (C. C. A. 7), claims 1, 2, and 6 of Gullborg and claims 2, 3, and 5 of Zerk were held valid and infringed. Discussion of one or both of these patents is also found in the following cases: Bassick Mfg. Co. v. C. P. Rogers & Co., Inc., 26 F.(2d) 724 (D. C.); Bassick Mfg. Co. v. Adams Grease Gun Corporation, 39 F.(2d) 904 (D. C.); Bassick Mfg. Co. v. United Grease Gun Corporation, 40 F.(2d) 549 (D. C.); Bassick Mfg. Co. v. Adams Grease Gun Corporation, 52 F.(2d) 36 (C. C. A. 2); Alemite Corporation v. Lubrair Corporation, 62 F. (2d) 899 (C. C. A. 1).

The structures enjoined comprise a grease reservoir, a pump, a hose, and a coupler or nozzle at the free end of the hose adaptable to pin-fittings affixed to the bearings of an automobile or other machinery, to establish a fluid proof connection between the grease dispensing pump and the grease cups or "fittings." Both were of substantially the same type and form, one being known as the "hand" and the other, the larger, as the "service" type, and each was adapted for use in combination with the pin-fitting of the Alemite system.

With respect to the Zerk patent, the accused device is a conical contact nozzle adapted to be attached to appellant's compressor units for the purpose of establishing temporary connection with certain "Zerk" type grease cups. Appellant argues that the claims of this patent must be limited to those receptacle elements, the nozzle contact face of which has a concavely spherical surface, while the nozzle manufactured by appellant has a contact surface which is conical and is adapted to be used with lubricant receptacles well known in the prior art.

Appellant does not make or sell pin-fittings. In general, it is its claim that claims 1 to 10, inclusive, of the Gullborg patent are not infringed, because appellant's compressors are not capable of the "suctional" function which was the basis for the finding of validity of claims 1, 2, 3, 4, 7, and 8, in the Lyman Case, and for denying validity of claim 12. Appellant also asserts that claims 14 and 15 are not infringed, or, if held to be infringed, are necessarily invalid for lack of invention, because they should be interpreted to cover only Gullborg's suctional compressor in combination with the specific "pin-fitting" described in the two claims.

Considering first claims 1, 2, 3, 4, 5, 6, 8, and 10 of the Gullborg patent, it is apparent that no infringement exists. The Lyman Case definitely recognized that Gullborg's improvement over prior patents was narrowly confined in that it pertained only to the form and resulting functions of Winkley's spring-pressed element for completing the seal. It was there said:

"In place of Winkley's cup, with top and sides complete, Gullborg substituted a cup-shaped perforated washer, which was spring-pressed into sealing contact with the head of the fitting."

The functions gained by this change of form were stated:

"The first was that after the initial sealing was effected by the spring pressure, it was intensified and made more efficient by the pressure developed in the liquid itself. The second was that by reason of the peculiar shape of the sliding member, and after it had been by the pressure of the fitting pushed up a substantial distance, upon the disunion of the parts the spring would throw it sharply down to its position of rest, leaving a vacuum behind it, and an upward inrush of air into this vacuum through the restricted opening would create a suction which would pull up into the opening the grease which at the moment of disunion had been below the opening, and which otherwise would smear up the parts and impair the cleanliness of operation."

In distinguishing between the validity of the claims sustained and the invalidity of claim 12, it was said:

"So far, therefore, as any claim in Gullborg depends upon this suction result, it is valid; so far as it must rest solely for its novelty upon the pressure produced adhesion, it is invalid. Of the claims in suit, Nos. 1, 2, 3, 4, 7, and 8, by their reference to a perforated sliding disc or cup washer, or means for removing excess lubricant, sufficiently imply dependence upon the construction which will give this novel suction effect. In claim 12 there is no novelty over Winkley, excepting that the interposed gasket is held against one of the members by the pressure of the lubricant. This claim, for the reasons just stated, is invalid."

Each of the claims here under consideration is limited to a coupler having a suction effect, consisting of a perforated sealing disc slidably mounted, or other equivalent means. The accused device of appellant is the old and well-known grease gun or compressor with a coupling means which contains no sliding disc or cup washer or any mechanical means for producing suction effect designed to remove excess lubricant. Such retraction of excess lubricant as was made to appear upon demonstration was slight and was apparently only that commonly incident to the movement of grease upon release of pressure. The accused structures therefore lack the vital element previously found essential for the validity of the several claims relied upon. To give them the breadth of construction necessary to find infringement would be to give to specific improvements in matter of form and structure a scope wholly unwarranted by any precedent.

Claims 14 and 15 of the Gullborg patent were held valid in the Lyman Case, but their scope was not there clearly defined. They have since been under consideration by several courts [see Bassick Mfg. Co. v. C. P. Rogers & Co., 26 F.(2d) 724 (D. C.); Bassick Mfg. Co. v. Adams Grease Gun Corporation, 39 F.(2d) 904 (D. C.); Bassick Mfg. Co. v. United Grease Gun Corporation, 40 F.(2d) 549 (D. C.); Bassick Mfg. Co. v. Adams Grease Gun Corporation, 52 F.(2d) 36 (C. C. A. 2); Alemite Corporation v. Lubrair Corporation, 62 F.(2d) 899 (C. C. A. 1)], and different constructions have been

placed upon the views expressed in the Lyman Case.

This appeal definitely presents the question whether or not, under claims 14 and 15, appellant and the public at large may use grease pumps of the prior art, adapted for connection with the Gullborg "pin-fitting" marketed by appellee under its other Gullborg patent 1,307,733, but devoid of Gullborg's "suction producing" coupling construction. Appellee's contention is that these claims should be given so broad a construction as to protect a monopoly of all compressors which are capable of connection with its alemite pin-fittings, regardless of whether those compressors include the suctional feature.

It is not claimed that appellant has ever made or sold the alleged *combination* of compressor and grease cup. Nor is it claimed that it has made, or sold the pin-fitting or grease cup described in claims 14 and 15 and protected by Gullborg patent 1,307,733. Appellant asserts only a right to make and sell prior art compressors not having the suction effect but adapted to be applied to any grease cups or fittings. It sells merely an unpatented nonsuctional compressor. Appellee charges contributory infringement.

Claims 14 and 15 are not materially different. Claim 15 reads:

"15. The combination with a grease cup comprising a tubular member having a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."

The grease pump element of the combination, if construed literally, would clearly embrace any construction of grease gun or compressor whether with or without the "suctional effect." Appellee has sold several hundred millions of the pin-fittings, and the inescapable consequence of acceptance of its contentions would be to establish for it a practical monopoly of the business of making and selling compressors, both patented and unpatented, for supplying grease to automobiles.

Determination of patentability of a combination of old elements turns upon whether the combination produces, through joint action of the elements, either a novel and useful result, or an old result in a more advantageous way. The problem is to ascertain what, if any, new co-operative function has been evolved. See Hailes v. Van Wormer, 20 Wall. (87 U. S.) 353, 22 L. Ed. 241; Palmer v. Corning, 156 U. S. 342, 15 S. Ct. 381, 39 L. Ed. 445; Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 19 S. Ct. 641, 43 L. Ed. 1058; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196; Radio Corporation v. Dubilier Condenser Corporation, 59 F.(2d) 309 (C. C. A. 3). Because of the necessity of ascertainment of this requisite joint or co-operative function if a patent is to be sustained, the duty rests upon the patentee to clearly and fully disclose the precise elements of the combination upon which he seeks a monopoly. He is required to particularly point out and distinctly claim each of the elements which is a part of the combination.

The second major element of the claims under consideration includes, "means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."

The all inclusive generality and baffling obscurity of this element preclude attempts to determine the presence of co-operative function, and it is only by reference to the drawings and specifications that the language can be accorded any specific meaning.

Claims must be interpreted in the light of specifications as though the words "substantially as described" were incorporated in each claim and should be limited to this contribution, which is the invention disclosed by the patent. Radio Corporation of America v. Twentieth Century R. Corp., 19 F.(2d) 290 (C. C. A. 2); International Banding Machine Co. v. American Bander Co., 9 F.(2d) 606 (C. C. A. 2); Tompkins-Hawley-Fuller Co. v. Holden, 273 F. 424 (C. C. A. 2); Fowler & Wolfe Mfg. Co. v. McCrum-Howell Co., 215 F. 905 (C. C. A. 2). See, also, National Tube Co. v. Mark, 216 F. 507, 515 (C. C. A. 6).

It is significant that neither the drawings nor the specifications afford any basis for liberal construction of the word "means." The only "means" illustrated or referred to are those which include as a novel feature a perforated sealing disc slidably mounted to reciprocate in the bore of the coupling member. The six objects of the invention are stated to be:

1. To provide novel means for supplying a lubricant under pressure to the parts of an apparatus to be lubricated, the said means

comprising a grease pump or gun and means for detachably connecting the discharge of said grease pump or gun with the part to be lubricated.

2. To provide novel coupling means for connecting the grease gun with the parts to be lubricated, the said coupling means being so constructed that when the coupling members are uncoupled or disconnected from each other there will be no excess lubricant on the outer ends of the coupling members.

3. To provide novel means for effectively sealing the joint between the coupling members so that the lubricant may be forced between the parts to be lubricated under a very heavy pressure.

4. To provide novel means whereby lubricant may be supplied to parts to which it is difficult to gain access.

5. To provide novel coupling members to be permanently secured to the parts to be lubricated.

6. To provide novel means to assist in attaching and detaching a tubular coupling member to a part to be lubricated.

Nowhere in the specifications is there an indication of an intention to connect a novel pin-fitting with any and all known coupling means. Nor is there any suggestion that greater strength or efficiency would be obtained by such a combination.

It has often been stated that an element described in such general terms as to include every form of the element or device then known is insufficient except when the generic description can properly be interpreted to mean the particular form of the element set forth in the specifications. This necessarily follows from proper application of section 4888 of the Revised Statutes, as amended (35 USCA § 33), which provides that the applicant for a patent shall file in the patent office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in full, clear, concise, and exact terms, and that he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. See Bettendorf Co. v. Ohio Steel Foundry Co., 56 F.(2d) 777 (C. C. A. 6). In the case of Portland Gold Mining Co. v. Hermann, 160 F. 91, 99 (C. C. A. 8), it was said:

"In a combination device consisting in congeries of well-known mechanical appliances, no liberality of construction is accorded to it to create a monopoly; but it is limited to the descriptive elements in the combination as expressed in the specifications; and no great liberality of the doctrine of mechanical equivalents can be indulged in its favor. As the applicant for such combination of old devices chooses his own expressions in presenting it, and is required to enumerate the elements of his claim, he is limited to the combined apparatus as specified. And no one is an infringer of a combination claim unless he uses the elements thereof, and in substantially the same mode of co-operation."

And in the case of American Can Co. v. Hickmott Asparagus Canning Co., 142 F. 141, 146 (C. C. A. 9), we find the following:

"The question arises whether infringement is thereby avoided. The appellees contend that the words in the claim 'means for interlocking the hooks on the blank' are limited by the words which immediately follow, 'substantially as specified.' But those words refer to the whole claim, and import nothing into it not already there, either to narrow it, so as to escape anticipation, or to broaden it, so as to establish infringement. The words mean 'substantially as specified in regard to the combination which is the subject of the claim.' Lake Shore R. R. Co. v. Car-Brake Shoe Co., 110 U. S. 229, 4 S. Ct. 33, 28 L. Ed. 129. Of course, an inventor cannot by the mere use of the word 'means,' in reference to the accomplishment of a designated function in a combination claim, appropriate any and all kinds of mechanism or devices which may perform the specified function, or any other mechanism or device than that which is described in the patent or which is its equivalent. Reference must be had to the specifications to ascertain the means which are made an element of the claim and are protected by the patent. Dudley E. Jones v. Munger Imp. C. Machine Mfg. Co., 49 F. 61, 1 C. C. A. 158; Williams v. Steam Gauge & Lantern Co. (C. C.), 47 F. 322."

The exact question is the proper interpretation to be given to the word "means" and the language immediately following. A similar question arose in the case of Dudley E. Jones Co. v. Munger Improved Cotton Machine Mfg. Co., 49 F. 61, 65 (C. C. A. 5), wherein one of the elements of the combination of the claim being considered was "means for delivering the cotton from the conveyer to the gin." The court said:

"It is true that the claims must be construed according to the language of each, but specifications and designs may be referred to to limit or explain, if not to enlarge. Can we consider that the patent of complainant may be held to cover any and every means that

might possibly be used to convey the cotton from the exhaust chamber to the gin, or must it be limited to the actual means claimed, described, or suggested in the specifications? This is, as has been herein decided, a patent for a combination, and each and every element of such combination must be used as patented, or the entire result is changed, and the machine sought to be held as infringing is a different one. In Vance v. Campbell, 1 Black, 427 [17 L. Ed. 168], the court say:

" 'Unless the combination is maintained, the whole of the invention fails. The combination is an entirety. If one of the elements is given up, the thing claimed disappears.'

"In determining what the combination is, for which letters patent have been granted, the entire designs, specifications, and claims may be considered. It is this special combination which has been held to be patentable on account of its producing a new and useful result; and, should it be held that this patent could cover every means that could·be used for this·function, there might be a new and other combination which would be valuable and useful, yet would be covered by these letters patent."

The rule is, therefore, that the scope of a patent upon a combination should be limited to the specific devices described or their mechanical equivalents. Applying these principles to claims 14 and 15, it must be held that the interpretation of the words "means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup" should be in the light of the drawings and specifications. Nowhere in the specifications is there found a description of any other coacting means than the hollow coupling member described in line 109, page 1, to line 18, page 2, of the patent, which read:

" * * * A hollow coupling member, indicated in general by the reference character 21. The free end of this coupling member, as shown in Fig. 2, is provided with a bayonet slot 22, the transverse portion 23 of which is inclined from the inner end of the longitudinal portion of the slot toward the outer end of the coupling member for a purpose which will be referred to later on. The bore of the coupling member is enlarged at 24 to provide an annular shoulder 25. A perforated cup leather or sealing disk 26 is slidably mounted in the annular portion 24 of the bore of the coupling and is urged against the shoulder 25 by means of a coiled spring 27, one end of which abuts against the cup leather or sealing disk 26 and the other

end of which abuts against the adjacent end 28 of the conduit 19. This end of the conduit may be soldered or secured in any convenient manner to the coupling member."

The coaction between the grease cup and coupling member is described in lines 47 to 84, page 2 of the patent. No alternative means is shown in the drawings or described or referred to in the specifications.

The word "means" which introduces the second element of claims 14 and 15 admits of no more than two possible constructions. It must either signify only the "novel means" several times referred to in the description and disclosed by the drawings, or include all possible means, patented or unpatented, then in existence or discovered during the life of the patent, for making the connection between a grease pump and the pin-fitting covered by the patent, Gullborg 1,307,733. Externally, the pin-fitting is the same as those in common use with bayonet couplings prior to this patent. Its novelty is claimed to reside in increased strength and economy of manufacture effected by the extension of the projecting "arms" entirely through the fitting, and the resulting provision for support of the spring which actuates the closure. It is the view of the court that these advantages may be claimed only where the pin-fitting described is used in combination with couplers having the novel suction effect. In view of the limited scope of the invention, this interpretation of the word "means" as used in these claims is within the principles announced in Davis Sewing Mach. Co. v. New Departure Mfg. Co., 217 F. 775, 782 (C. C. A. 6).

Counsel for appellee in apparent recognition of the inadequacy of the drawings and specifications of Gullborg 1,307,734 to meet the exactions of section 4888, Rev. St., urge that reference should be made to Gullborg 1,307,733 and that claims 14 and 15 are to be interpreted in the light of the drawings and specifications of that patent which show only the nonsuction effect coupler. To support this contention, the case of In re Tully, 56 App. D. C. 274, 12 F.(2d) 624, is cited, where it was said:

"It is familiar law that this claim must be given an interpretation consistent with the application in which it originated."

The issue in that case, however, involved the allowance or rejection of claims pending in the patent office where different rules clearly apply. No case is found where, in an effort to interpret the word "means" as an element of a patent upon a combination, reference has been permitted to another patent upon one

of the elements for interpretation of that word.

It is the conclusion of the court that claims 14 and 15 are valid only if the word "means" is limited by construction in the light of the drawings and specifications to a coupling member embracing mechanical means designed to produce a suction effect for the purpose of removing excess lubricant. Appellant's structure therefore does not infringe these claims.

The discussion in the Lyman Case of the validity of these claims was limited to the following paragraph:

"We see no reason for denying the patentable novelty of Gullborg's particular form of fitting, by reason of which it has come to be called a pin fitting, and by which the same pin which furnished bearings for the slot was made to pass through the fitting and furnish an abutment for the valve closing spring; *but it is only this complete combination that can be patentable.*"

The italicized words obviously refer to a specific combination. There was no discussion of the validity of the claims considered in the scope here urged by appellee, and the case is not open to construction contrary to the view here expressed. It is our conclusion, therefore, that the case is not to be regarded as authority for appellee's contention.

With reference to claims 2, 3, and 5 of the Zerk patent, it is important to observe that each contains a limitation as to form which denies the right to generic construction. These claims were sustained in the case of Larkin Automotive Parts Co. v. Bassick Mfg. Co., 19 F.(2d) 944 (C. C. A. 7), upon the asserted novelty of the concavely spherical surface of the nozzle and the dirt-cutting circumferential edged part adapted to be embraced within the spherical surface of the nozzle. The principle applicable to claims specific as to matters of form, structure, and function is stated in the case of D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 259 F. 236, 240 (C. C. A. 6), as follows:

"* * * Where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention,

are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency."

In each of the three claims relied upon, the patentee has expressly limited himself to a structure embodying a "nozzle contact surface having a concavely spherical surface." The appellant's coupler complained of has a conical surface, that is, the contact face is in shape a truncated cone. The main object of the Zerk invention was stated to reside in relieving the operator performing the several operations involved in greasing automobiles from assuming awkward positions, the nozzle contact face being adapted to be pressed against that of the pin-fitting from any one of a number of different angular directions, at the same time maintaining a tight lubricant proof contact between the circular edge of one contact face, and the spherical surface of the other contact face which engages it. The specific form adopted renders it unnecessary to hold the coupler and pin-fitting in precise alignment. Whether or not the description of appellant's device as a truncated cone is meticulously accurate is not important. It is obvious that upon the contact surface thereof there is no substantially spherical concave element within the meaning of that description in the patent. The claims relied upon are entitled only to a very narrow range of equivalents and cannot be found to be infringed by a nozzle the form of which is such that it does not make a sealed connection between the face openings unless it is held in an approximately vertical position. Appellant's structure makes complete contact only when the axis of the cone is substantially perpendicular to the plane of the circle. It is elementary that one thing to be the equivalent of another must perform the same functions. It follows that the two nozzles cannot be held to be mechanical equivalents. Among desirable results claimed by the patentee is the claim that:

"A leak proof connection is maintained between the rim or edge 16 of the nipple contact face and the spherical contact face of the nozzle by the manual pressure exerted toward the nipple upon the handle. This is true, even though the angle from which the nozzle is presented to the nipple is varied widely, the nipple circular edge making a tight joint with the nozzle spherical face 15 in all cases, so long as they are pressed together, and when so pressed together complete a closed conduit or passage-way for lubricant under high pressure passing from the gun nozzle to the interior of the nipple."

Appellant's device, when held by the operator from different angular directions, is clearly not adapted to maintain lubricant proof contact between the adjacent surfaces.

It is the conclusion of the court that appellant's device differs materially in function, this difference arising from the fact that there is no substantially "spherically concave" element in appellant's structure. Infringement is therefore not present.

The decree of the District Court is reversed and the cause remanded for the entry of a new decree in accordance herewith.