## UNDERFEED STOKER CO. v. AMERICAN ENGINEERING CO.

District Court, E. D. Pennsylvania. October 15, 1929.

No. 3133.

Cyrus N. Anderson, of Philadelphia, Pa., for plaintiff.

Howson & Howson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This cause concerns letters patent No. 1,404,568, issued to Arthur H. Blackburn January 22, 1922. It relates generally to "a multiple retort underfeed furnace." The claims in issue are claims 5, 7, and 8. Of these 7 is typical and presents the issues here to be determined.

Two very ominous statements were made at the argument. Opposing counsel each stated that he was unable to follow the argument of the other because he could not understand it. This doubles the difficulties of the trial judge.

An outline of the situation presented by one problem which confronted this art is a good approach to the question presented. In what may be called the ordinary furnace the fresh fuel is supplied by throwing it on top of the fire. In what is known as the "underfeed" furnaces the fresh fuel is introduced and forced under the fire. There it cannot burn because of the nonaccess of oxygen. The heat, however, is sufficient to drive off the more volatile gases, thus causing the fresh fuel to coke. In the larger power plants, with which this cause concerns itself, there is a construction because of which such a furnace is described as "a mul-

tiple retort underfeed furnace." The space between the different retorts is occupied by tuyères. In this word we again have evidence of the contributions of the French to the arts and sciences. These tuyères are so constructed as to form a pipe or tube through which air is forced and ejected in fine streams or jets. The retorts and the intervening tuyères are inside the walls of the furnace. The fire box is formed of the space over the retorts and tuyères. The space below is closed forming a wind box into which air is forced, to be released, as above stated, in jets by means of the tuyères. As the fuel thus coked is pushed upward it is subjected to the blast of the jets of air mentioned by which oxygen is supplied, and the coked fuel is then burned. Some of the volatile gases which are released in the coking process pass upward through the fresh fuel which is coking and the fuel which is burning and become ignited above the fuel bed.

This somewhat tedious and otherwise superfluous description is a prelude to an understanding of what are known to this record as "zones of temperature." There are to begin with three of them. The first is the zone of low temperature occupied by the fresh fuel; then the "combustion zone" where the coked fuel is burned; finally, the "incandescent zone" in which the volatile gases mentioned burst into flame. The furnace coal used is bituminous. There is mixed with it metallic and other substances which do not burn to an ash but melt. These substances are pushed with the fuel upward into the zone of high temperature where they are melted and run. Clinkers are thus formed which when they come in contact with the sides of the furnace attach themselves in an ever-growing mass. This gives us a fourth zone spoken of as the zone of clinker formation. This is not coterminous with the zone of combustion, but near its lower level. This barnacle growth presented a real difficulty in the efficient operation of this type of furnace. The feeding of the fuel to the fire was interfered with and the accumulation might extend out so far as to obstruct the operation of the near retorts. In the clinker removal there was danger of scaling the bricks of the wall of the furnace. The problem of getting rid of these barnacles defied solution. The patentee dealt with it by his method of the prevention of or minimizing of the adhesion of the clinkers to the sides of the firebox. This method is described in the patent application as the interposition between the side wall of the furnace and the "extreme retort" of a side plate capable of being air cooled by which the clinker adhesions are prevented or any clinker obstruction to the fuel feeding operation which may form on the side plate or side walls of the furnace be very much reduced. This method the plaintiff avers to be a success and to have received the recognition of the trade as new and highly useful.

The defense is invalidity in that the idea underlying the Blackburn method of combatting clinker adhesions to the walls of the furnace was a well-known method in use in other furnaces and that all that Blackburn did was to apply it to the type of furnace known as "the multiple retort underfeed furnace." There is likewise a denial of infringement. The difference between the method of the patent and that of the defendant upon which the denial of infringement is based will be discussed later. The thought underlying this claimed invention is an obvious one. It is that in the absence of a high temperature a clinker formation will not adhere to the side wall. The expedient of securing a lowered temperature by the introduction of air is again, if not equally obvious, at least a very old and well-known one. There could be no patentable invention in the resort to either or both of these thoughts, nor could there be in the mere transfer of a method employed in one type of furnace to another. Any claim to invention must in consequence be restricted to the new method employed to apply well-known principles to meet a new problem or an old problem presenting new phases, or to modification of old methods to meet new problems. There is a difference which any one would note in the clinker problem presented in the operation of top feed furnaces and the problem presented by underfeed furnaces. A practical test of very great value in determining whether there is invention or merely the application of ordinary knowledge of known methods and skill in applying them is afforded by the fact situation presented. If what is accomplished by the claimed invention is something of great value to the trade and much desired, and in consequence much sought and yet not before found, it is idle to suggest that what was thus found was within the easy reach of any one possessed of ordinary knowledge and skill. This does not mean that invention must be found to be present, but it is convincing evidence that what has been done is something more than the product of ordinary skill. We make this indicated fact finding in favor of the patentee here. The feature of the patented method of dealing with the clinker

problem, which is claimed to give it originality and success, is the selection of the place or zone to which the plates are carried and the cooling current of air is introduced. The experience of the application disclosed by the file wrapper imposes this limitation upon the patent. With it admitted there is no question of validity in the case. The sole question becomes one of infringement. Such infringement is denied because, as the defense avers, the defendant's construction neither in purpose, method, nor results is the construction of the patent. The method of the latter, as already stated, is to interpose between the clinker forming material and the wall a cooling device in the most active part of the clinker forming zone, so that the clinker will not attach to the wall or the barnacles so formed will be very much reduced. The method of the defendant, it is confidently argued, is wholly different in that there is no attempt to interpose anything at the level of clinker formation to protect the wall from clinker contact and adhesions so as to prevent clinkers, but that, on the contrary, the clinker formation is ignored, if not actually encouraged, because by defendant's method of the introduction of an air cushion the adhering mass is so far reduced to an ash or rendered so pliable that the formed clinkers slough off themselves or are so readily removed as to be rendered innocuous.

We have no sympathy with the charge that defendant was guilty of any impropriety in resisting plaintiff's claim to a monopoly by refusing to take out a license because other users had done so. A user is free to deny the right to a monopoly, and it is his duty to do so if the claim is unfounded. The question is solely one of legal right.

However favorably we would be impressed with the argument addressed to us in support of noninfringement, an insuperable obstacle to its acceptance exists in what the defendant claimed for its method in making its sales appeal to the trade. The mode of operation which the noninfringement argument disclaims and denies, and upon which the method of the defendant is differentiated from that of the patent, is the very mode of operation, the merit of which the defendant claimed for its method in its appeals to the trade in making sales. We are quite well aware that in the teachings of the art of successful salesmanship stress is not laid upon an adherence to an accurate measure of the real merits of that which is offered for sale, but, when the seller describes what he is selling and the features in which its claimed excellence exists, he cannot complain if he is taken at his word. This defendant made claims for its method, which, if true, compels a finding of infringement, and we take it at its word.

Without prolonging the discussion, we state the conclusions reached.

1. The patentee devised a method of avoiding, or at least minimizing, objectionable clinker formations in multiple retort underfeed furnaces, which was given recognition by those concerned with the problem as an acceptable solution of it.

2. The patentee accepted and is bound by a limitation imposed by the Patent Office that the protection interposed between the clinker forming material and the walls of the furnace "extends above the normal zone of clinker formation," but this does not imply nor mean that the plates provided by the patentee extend through the zone of active combustion or indeed into it or more than to it so as to protect the walls of the furnace from objectionable masses of clinker formations.

3. The defendant has been guilty of infringement. The increase in the thickness or depth of the zones of incandescence and of combustion would lengthen the distance between the line marking the normal level of clinker formation and the upper line of the level of the flame, but the defendant does not escape a finding of infringement because of the increase in the length of this distance.

4. The usual decree following findings of validity and infringement may be submitted.

We have made no distinction among the claims in issue because we have understood that a finding as to claim 7 would control all.