**AMERICAN ENGINEERING COMPANY, Defendant-Appellant, v. UNDERFEED STOKER COMPANY OF AMERICA et al., Plaintiff-Appellees.**

No. 4312.

Circuit Court of Appeals, Third Circuit.

July 21, 1930.

For opinion in court below, see 35 F.(2d) 32.

Howson & Howson, of Philadelphia, Pa. (J. Lewis Stackpole and H. L. Kirkpatrick, both of Boston, Mass., of counsel), for appellant.

Southgate, Fay & Hawley, of Worcester, Mass., and Cyrus N. Anderson, of Philadelphia, Pa. (Louis W. Southgate and Charles T. Hawley, both of Worcester, Mass., of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and AVIS, District Judge.

BUFFINGTON, Circuit Judge.

In the court below, the Underfeed Stoker Company of America, owner of patent No. 1,404,568, granted January 24, 1922, to Arthur H. Blackburn, for a furnace, charged the American Engineering Company with infringement thereof. On final hearing that court held the patent valid and infringed. Thereupon defendant took this appeal.

In reaching its conclusions, the court below has given the litigants their due by a thorough discussion of everything involved in the case, and, as this court is in accord with its decision, it would be a needless repetition to clothe in different language what has been sufficiently discussed and properly decided. We avoid such needless restatement by reference to such opinion and confine ourselves to narrow limits in saying what we do.

The object of the patent is to prevent or minimize clinker adhesion to the plates of the side walls of the furnace. In retort stoker practice coal is fed by ram at the bottom, not at the top, of the fuel bed. Coal so treated cakes, and the heat becomes hotter and hotter from the point where the new coal is put in until it reaches the top of the fuel bed, where clinkers are formed which adhere to the furnace side. The device of the patent provides air chambers along the furnace side, the relative coolness of which, due to air circulation through such chambers, prevents clinkers sticking to the walls.

We have been impressed by the proofs of the serious trouble caused by such wall clinker formation in the antepatent practice and by the subsequent prevention of such formation by the cooling device of the patent. An experienced witness says: "Boilers without the high tuyere plates have to be cleaned

every night, every twenty-four hours, * * * the clinker is vertically six or seven inches, sticking out into the fire at least a foot on each side. * * * This big projecting clinker completely eliminates the working of each side. * * * It cuts down in effect the capacity of our stoker from four to three retorts and sometimes perhaps two retorts. If we run long enough, it will cut down fifty per cent. * * * While the clinker projects, it acts as a shelf and the fuel does not, of course, feed down the stoker; it cannot; the clinker covers the moving part of the stoker. * * * In the stoker equipped with tuyere plates we have pretty nearly eliminated clinker trouble. * * * There is a difference in the cost of maintaining our side walls with the two different types of equipment. I would like to say that with the carborundum fire bricks and the boiler that is equipped with the high side blocks, the high tuyere plates, the bricks do not show any appreciable wear in two years and three months, while the others, the bricks are half worn out, the same kind of bricks, carborundum, in about seventeen months; and as those are pretty expensive it means money to replace them. The furnaces without tuyere plates show more wear in a relatively short period than the other furnace does in a longer period."

Another witness of an important plant, comparing the old type with the device of the patent, says: "With the side wall plates we have rebuilt the side walls once in a period of four or five years. Without the side wall plates we rebuilt the walls in and from 30 to 90 days." We quote but these brief extracts, but note the proofs are unusually full of the great improvement in fuel efficiency, the lessening of clinker cleaning, decreased cost of side wall rebuilding, the elimination of time lost in stoppage, and other elements in plant operation.

We also note that the new results obtained by the use of the patented device and the inventor's right to patent protection at once led strong concerns to take licenses thereunder.

We also note the significant and persuasive fact shown by the defendant's commercial conduct, which was stressed in the trial judge's opinion in these words:

"The mode of operation which the noninfringement argument disclaims and denies and upon which the method of the defendant is differentiated from that of the Patent is the very mode of operation, the merit of which the defendant claimed for its method in its appeals to the trade in making sales."

Relying, as we have said, on the opinion of the trial court, and feeling the case has had at its hands the adequate discussion to which litigants are entitled, we forego further statement, and affirm the judgment below on the judge's opinion.